SOLOMON MCCLANAHAN *v.* JAMES BARROW et al.

Where A. went into the possession of land under a verbal contract of purchase with the ancestor of B. and C. the claimants of the land, and he held and claimed possession under no one else but the ancestor: — *Held*, that the possession of A. was not adverse, and his possession will, in law, be regarded as the possession of the person under whom he obtained possession.

In such a case the ancestor of the claimants B. and C., having gone into possession of the land under a deed which was not executed by the party who

made it in his proper character, but it purported to be a conveyance of the land in fee, the deed was not void upon its face : — *Held*, that the ancestor of the claimants B. and C., having gone into possession under color of title, having actual as well as legal seizin, upon the ancestor's death, B. and C. succeeded to his rights, which gave them a sufficient *primâ facie* title to recover the land in an action.

A sale of land by a sheriff to which the party as whose property it was sold has no title at the time, vests no better title in the vendee than the party had before the sale : — *Held*, that in such a case the statute of limitations only commences running from the time the vendee, who must have the actual conveyance, takes actual possession of the land, but a third party who holds possession under him cannot claim the benefit of that statute.

Where the judgment of the court below is clearly right, this court will not be warranted in reversing it, because instructions asked to the jury were erroneously given or refused.

Where the relation of vendor and vendee exists, and not that of landlord and tenant, it is not necessary to give notice to quit, before an action of ejectment can be maintained.

In error from the circuit court of Winston county; Hon. Robert C. Perry, judge.

James Barrow et al., as the heirs of Joseph Barrow, deceased, instituted an action of ejectment in the circuit court of Winston county, against Solomon McClanahan and wife, to recover possession of a lot of land which Joseph Barrow had made a verbal contract to sell McClanahan and wife, and they were put into possession of the land by said Joseph Barrow in the year 1837 or 1838, and held possession of it, upon which the said McClanahan had made improvements, from that time until this suit was instituted in September, 1852. No writing ever passed between Joseph Barrow and the McClanahans in relation to the sale of the lot; but in 1842 the lot was sold under an execution issued on a judgment against said Solomon McClanahan, and it was purchased by James McClanahan for the sum of $100, when at that time the lot with the improvements was worth from $5,000 to $8,000. Solomon McClanahan and wife claimed possession of the lot under a contract or purchase from James McClanahan, who had purchased it at sheriff's sale as the property of said Solomon McClanahan.

56 *

The defendants (McClanahans) relied upon the statute of limitations, and that proper notice had not been given them before the suit was instituted. The jury found a verdict for the plaintiffs, and the defendants prayed a writ of error to this court.

*Freeman* and *Dixon* for appellants.

The statute gives no time, nor fixes any limits for notice to quit to be given to the off-going tenant, and we have to refer to the common law for our guidance upon this subject, that, in the absence of the statute, being our law. Upon an examination of this it will be seen, that when there is a term of renting stated in the lease, as from week to week or from month to month, a week or a month's notice to quit must be given according to the term; and when the lease is from year to year, or the lease or holding is indefinite as in the present case, it is necessary to give at least six months' notice to quit to the tenant, and that before the expiration of that period, the tenant is not a trespasser, but holds lawful and proper possession. *Shirley* v. *Newman*, 1 Esp. 266; *Henderson* v. *Chanick*, Peake, 4; *Parry* v. *Hazell*, Esp. 94; 4 Kent's Com. 115, 116.

If we have shown, then, that at the time this action was brought, McClanahan was no trespasser, but was in the lawful possession of the premises sued for, then there is not the slightest foundation for the suit, and this court must not only reverse the judgment, but dismiss the action entirely.

To maintain ejectment before the term of lease expires, would be equivalent to maintaining an action upon a promissory note before maturity.

In ejectment the recovery must be had upon the right of entry, and that only; and we think that the plaintiffs in ejectment in this case have failed to show that at the time of instituting this action, they had any such right of entry for want of lawful notice to quit.

It is a familiar principle of law, that the plaintiff in ejectment must recover upon the strength of his own title, and not upon the weakness of that of his adversary. It will not avail him

that the defendant has no title at all; if the proof shows the title in any other person than the plaintiff, he must fail.

Now let us apply these principles to the present case. McClanahan went into possession under a contract of purchase in the year 1836, and made valuable and extensive improvements upon the land in the presence and with the consent of Joseph Barrow, who then held the legal title. He paid the original purchase-money due on the premises by Barrow, amounting to about $100. He paid about $1,600 of a judgment against Barrow, and perhaps some other small sums, all of which were matters known to the public, and never claimed by McClanahan as payments for the land. Nearly all of the witnesses prove that the property was recognized in the community as the property of McClanahan. This impression, which was stimulated by the great improvements made upon the property by McClanahan, and by his constant and quiet possession for a length of time, and that, too, with the knowledge and acquiescence of Joseph Barrow.

About the 1st of January, 1840, this property, together with other property of McClanahan, was sold by the sheriff of Winston county, under judgments against him. The sale was open and public, and Joseph Barrow was present, and one of the witnesses says that he was standing by James McClanahan, and in conversation with him at this sale; that Barrow did not forbid the sale, or give notice to the public that he had an interest in the lot.

The principle of law is well settled, that the owner of land standing by and permitting the sale of the land to another, and remaining silent, not interposing his claim, is estopped from setting up any title thereto as against the purchaser who has parted with his money at such sale without notice of the claim. This is well elucidated in 1 Story, Eq. § 385, 387, 388, 389, 390, and cases cited; and the principles there laid down have been repeatedly acted upon by the courts of the country, and in a very recent case in this court, not yet reported. *Tarpley* v. *Robinson et al.,* Opinion Book; *Taylor* v. *Cole,* 4 Munf. 351; 19 Wend. 557; 21 Ib. 514; 2 Devereux, R. 179; 4 Ib. 472; 12 N. Hamp. 133; *Hobbs* v. *Norton,* 1 Vin. 136; 2 Ib. 150, 370;

*Stone* v. *Backer*, 6 Johns. Ch. R. 166; *Beresford* v. *Mulland*, 5 Ves. 688.

The silence of Joseph Barrow at the sheriff sale, his acquiescence in the same, and in the disposition of the land by James McClanahan after the sale, and all such acts as the above-cited cases, work a forfeiture of the title of Barrow in favor of James McClanahan. In fact it would seem that upon a just application of the principles of law above shown, no other view of this case could be taken adverse to James McClanahan's title under the sheriff's deed.

The proof shows that James McClanahan, after his purchase at sheriff's sale, in 1842, gave notice to Joseph Barrow that he had title adverse to Barrow's, and that under it he had placed Mrs. McClanahan in possession of the premises, so that there was not only at the time of the trial of said cause an outstanding title against that of plaintiff's, but possession under that title, and full notice of it to Joseph Barrow many years before, he acquiescing therein.

The instructions asked by defendants below, and refused by the court, is also ground of error.

*F. Anderson* for appellees.

The authorities are, I believe, unanimous, that before the possessor of land can rely upon the statute of limitations, his possession must be adverse, and not permissive. See Angell on Lim. p. 400–404, 410–415, § 5, 6, 11, and note to § 11; 6 Peters, R. 743; 9 Wheat. R. 288; Angell on Lim. p. 416, 417, 427, 428, § 413, 419; 8 Cranch, 230; 10 Yerger, 387, 513; 9 Ib. 86; 7 Cow. 747.

The authorities cited in Yerger's reports are direct, the statute in Tennessee being identical, I believe, with ours.

As for the outstanding title attempted to be set up in James McClanahan, it is clear that he could have no more title than the defendant, as he only claimed to have bought his title; but on examination of the record it will be seen that he has not even the title of the defendant, if the latter had one, since the deed to him in the record has no judgment or execution to sustain it. It will be seen that the deed purports to have been

made under quite a different judgment and execution than the one introduced in evidence to sustain it.

The instructions asked on the part of the defendant, in reference to J. McClanahan's title, had no application to the case, because he does not appear ever to have had any possession whatever, and whatever title he might assert could not possibly start the statute of limitations as against Joseph Barrow, he having no possession in power of which the statute could run.

*D. Mayes* on the same side.

Mr. Chief Justice SMITH delivered the opinion of the court.

This was an action of ejectment tried in the Circuit court of Winston county. A verdict was rendered for the claimant; a motion was made for a new trial by the defendant, which was overruled, and a bill of exceptions, which embodies the evidence, was taken to the decision on the motion, and is brought before us by writ of error.

The claimants offered on the trial, as evidence, first, a copy of an entry of the north half of the west half of the north-west quarter of section thirty-four in township fifteen, range twelve, made by Jesse Dodson on the 20th of January, 1834, in the land-office at Columbus, taken from the book in which entries of land are recorded, certified by the receiver at the said land-office; second, a deed of conveyance for the same land to Joshua Leach and others, members of the board of police for Winston county; and third, a deed executed by Burr H. Head and others, who describe themselves as "police officers" of said county, conveying to Joseph Barrow, the ancestor of the claimants, certain lots in the town of Louisville, in Winston county. The claimants then offered witnesses, who proved the death of Barrow in 1851, and that they were his only heirs at law; that the land sued for in this action was a part of the land conveyed by Dodson to the board of police, and by the board of police to Barrow; that Solomon McClanahan was in possession of the land in controversy at the time of the institution of the suit, and that Rebecca McClanahan was the wife of said Solomon,

and was living with her husband on the land when the suit was commenced.

It was further proved that said McClanahan went into possession of the premises about 1837 or 1838; that he made improvements on the land, had exercised acts of ownership over the same ever since, and that Rebecca, his wife, had lived with him on the land ever since he first went into possession. It was also in proof that McClanahan stated, in a conversation held between himself and two of the claimants, James and Ezekiel Barrow, that he went into the possession of the premises sued for, under Joseph Barrow, under and by virtue of a verbal contract for the purchase of the same at the price of $2,200; that he gave no notes to secure the purchase-money, and that no bond for titles was ever executed by Barrow, and that no writing of any description had ever passed between them in reference to the land. In this conversation McClanahan was notified, by said claimants, that his contract for the purchase of the land was at an end, that he must give up the possession or he would be sued. Subsequently to said conversation, and before the commencement of this suit, McClanahan and said claimants called the attention of the witness to the statute, allowing in certain cases compensation for improvements made upon land by the occupants, and asked his opinion in reference to that subject. On that occasion the witness inquired of McClanahan how or under whom he held possession of the land in controversy. McClanahan replied that he went into possession under Joseph Barrow, had held possession under him, and never claimed possession under anybody else. On that occasion there was no controversy between the parties as to the title of the property. The only matter between them was in relation to the improvements on the land.

The certified copy from the books of the land-office of the entry of the land by Dodson; the deed from Dodson to the board of police, and the deed from Head and others, in which the grantors are styled police officers to Joseph Barrow, were read to the jury without objection. It is now, however, insisted, first, that the copy of the entry, as certified, is not evidence

of title in Dodson. This objection is unfounded. The requisitions of the statute are strictly complied with. It purports to be a copy of the entry taken from the book in which entries of land, by law, should be recorded, and is certified by the legal custodian. Hutch. Dig. 871, art. 16, § 2. It was, hence, as good evidence, and of the same legal import, as the original certificate of entry.

Secondly, it is contended that the deed of Head and others to Joseph Barrow did not pass the title vested in the board of police by virtue of Dodson's deed, as it does not purport, upon the face of it, to be the deed of the members of the board, in their official character. But if this objection were admitted to be valid, it would avail nothing for the plaintiffs in error.

Solomon McClanahan, as shown by his own express statements, went into possession under the ancestor of the claimants, having made a verbal contract with him for the purchase of the land, held possession under him, and claimed possession from no one else. After he was notified that the contract for the purchase of the land was at an end, and that he would be sued unless he delivered up the possession, he set up no title to the land. He claimed compensation for his improvements. His possession, therefore, was not adverse. In law, it was the possession of the person under whom he held. The ancestor of the claimants went into the possession of the premises under the deed made by Head and others; and admitting that it was not a conveyance executed by the members of the board of police in their official character, it nevertheless purported to be a conveyance of the land to him in fee. It was not manifestly void on its face. He therefore went into possession and held under color of title. He died in 1851, having the actual as well as the legal seizin. Upon his death, the claimants became the tenants of the freehold by the descent cast. It cannot, therefore, be doubted that the title made out by the claimants was sufficient *primâ facie* to recover upon in this action.

In the next place, it is insisted, by the plaintiffs in error, that the right of entry of the claimants was barred by the statute of limitations, and hence that the verdict and judgment should have been rendered for the defendants below.

In support of this position, it is contended that Mrs. McClanahan, one of the defendants, entered upon the premises in controversy under an adverse title, and held possession for the period requisite to constitute the statute bar in this action.

The evidence offered on the trial, and which it is said sustains the position, was, first, a judgment against Solomon McClanahan rendered in the circuit court of Winston county, the execution which issued thereon with the sheriff's return thereto, and a deed made by the sheriff conveying the premises in dispute to James McClanahan, the purchaser at the sheriff's sale; and secondly, parol evidence, intended to prove that Mrs. McClanahan was in possession under James McClanahan, claimed title through him, and held possession adversely to the defendants in error.

There is no proof whatever that James McClanahan ever had possession of the premises. Solomon McClanahan with his wife remained in possession from the time he entered under the parol contract for the purchase of the land, down to the time when the suit was instituted. There was no proof offered which showed, at least with any certainty, that his wife claimed title to the land, either as the tenant or vendee of James McClanahan. One witness testified, that James McClanahan told Joseph Barrow that he was the owner, by virtue of his purchase at the sale made by the sheriff, of the land in dispute, and that he had put Mrs. McClanahan in possession, and intended to make her a deed; upon which Barrow said it was all right, and that he had no objection. Barrow was an habitual drunkard, and on that occasion was intoxicated. On the other hand, a witness deposed that James McClanahan, after the sale by the sheriff, told said witness that he did not claim title to the lot in dispute; that he had purchased the house on said lot, and only claimed the house.

The question, whether there was an adverse holding by the tenants in possession for a period of time sufficient to bar a recovery, was a question of fact for the determination of the jury. It is apparent from the record, the defence mainly relied on at the trial was the statute of limitations. The cause was submitted to the jury, with instructions which directed their

attention to the question of the adverse possession of the defendants. The jury decided the question in favor of the claimants; and in our view of the subject, their verdict was sustained by a clear preponderance of the evidence.

We have not minutely examined the instructions given or withheld at the instance of either party. But if it were conceded that erroneous instructions were given at the instance of the claimants, or that instructions were improperly refused, which were asked for by the defendants, we would not be warranted in reversing the judgment for that reason alone ; for as the verdict is clearly right, the plaintiffs in error were not injured by such action of the court.

It is further insisted that the verdict was erroneous, because it appeared from the evidence that a valid outstanding title existed in James McClanahan.

The title held by McClanahan as the vendee under the execution sale, could by no possibility be better than the title of Solomon McClanahan, who held in subserviency to the title of Joseph Barrow. As Solomon McClanahan could not successfully defend upon his own possession and title, it cannot admit of doubt, that he is equally incompetent to set up as a defence the same title in the hands of his vendee.

If, however, James McClanahan, after having procured the conveyance from the sheriff, had entered upon the land and held it adversely to the ancestor of the claimants, a different question would have been presented. The statute would have commenced to run from the time he took possession. But there was no evidence produced on the trial that he ever had actual possession. In fact, by his own admissions, he did not set up title to the land by virtue of his purchase at the execution sale.

Lastly, it is contended that the plaintiffs in error were entitled to notice to surrender the possession of the premises, before an action of ejectment could be maintained for their recovery. And it is insisted that, by analogy to the rule applied in England and in several of the States of this confederacy, to leases where the term is from year to year, or the lease or holding is

McClanahan *v.* Barrow et al.

for an indefinite time, the defendants were entitled to six months' notice.

The plaintiffs in error were not tenants from year to year. There was no contract of lease, express or implied. No action for rent or occupation could have been maintained against them. They were, therefore, neither tenants at will nor at sufferance, according to the technical import and consequences of tenancy. The rule, therefore, which, in cases of yearly leases or where the holding is indefinite, requires six months notice to quit, to be given before the landlord has the right to demand possession of the premises, is not applicable to the case before us.

In Kentucky, where a person is in possession of land, *bonâ fide,* under an executory contract for the purchase, it is held that a simple failure to pay according to the contract will not make his possession wrongful, and until he has denied the title of the vendor, or has refused to deliver possession upon demand and notice to quit, the vendor cannot maintain ejectment to recover the land. *Hall* v. *Mc Coy,* 6 J. J. Marshall, 918. A different rule is applied in Tennessee, where it is held, that if the relation of vendor and vendee exists, and not that of landlord and tenant, it is not necessary to give notice to quit before ejectment can be maintained. *Den's Lessee* v. *Webster,* 10 Yerg. 513. This appears to be the general doctrine on the subject. 7 Cow. R. 747, and cases cited.

But in the case at bar, notice was given to the defendant, Solomon McClanahan, before the suit was commenced, that the contract for the purchase of the land was at an end, and that he would be sued unless he delivered possession.

Let the judgment be affirmed.