## DYSON *v.* THE STATE, 26 Miss. Rep., 362.

### HOMICIDE.

The record, in criminal cases, must show that the jury were sworn, but it need not set out the form of the oath prescribed to them by the court, McCarty v. State, 26 Miss., 299; and if the swearing of the jury is improper in any respect, it must be made a part of the record by bill of exceptions. But where the oath is set out and is incorrect the verdict will be set aside.

Until the contrary appear, it will be presumed that the jury were sworn according to law.

The statement in the record that the jury "were sworn the truth to speak in the issue joined," is sufficient to show that they were sworn according to law.

If evidence is proposed, which, of itself, appears irrelevant to the issue on trial, and is objected to, the party offering it is bound to show its relevancy either by explanation to the court as to its bearing on the case, or by introducing other evidence connecting it with the *res gestæ*, and opening the door to its admission.

Bare fear of danger or great bodily harm, unaccompanied by any overt act indicating a present intention to kill or injure, will not warrant a person in killing another. There must be actual danger at the time. There must be an overt act on the part of the deceased to carry out his threats to warrant his killing, or the danger of such design must be imminent, pressing and unavoidable.

The acts of public officers, especially judicial tribunals acting within their jurisdiction, are valid, and done rightly until the contrary is proven.

The high court of errors and appeals will not take cognizance of points not presented in the court below; [1] and the rule applies with greater force where the point is one of fact, and was raised and abandoned.

Every fact incidental to the proceedings in the circuit court, not required by law to be incorporated in the record must be presumed to have been properly done.

Error to Panola circuit court. MILLER, J.

James H. Dyson was indicted in the circuit court of Panola county for killing Samuel H. Nelms, and was found guilty of manslaughter in the first degree, and sentenced to fifteen years' imprisonment in the state penitentiary. It was proven that Nelms was riding along the road leading from the town of Panola to his house. Jennings Estell, about sixteen years of age, was the only person in company with him. When within a mile of his own house, the accused (Dyson), who had previously taken his position about fifteen yards from the road, in a sink-hole in a ravine, shot Nelms with a gun as he passed, who fell from his horse. Dyson then walked up to where Nelms was lying badly wounded, and said to Nelms, "You were going to kill me." Nelms said, "I was not." Dyson then said, "You tried to get Jones to kill me." Nelms answered, he "had not." Dyson then presented his gun to Nelms' head, who turned, as he lay on the ground, and said, "Good-bye, Jennings." The gun fired and killed Nelms dead immediately, and the muzzle of the gun was so near him that the powder burnt his coat and shirt and blistered his skin.

The defendant offered in justification of this act of killing, threats made by Nelms against him (Dyson).

The proof was in substance, that John R. Dickens, a few days before the killing, heard Dyson say to Nelms, "You made a difficulty with me, and I don't want a difficulty with you." Nelms replied, "God damn you, I don't want any difficulty with you either," and added, "Mr. Dyson, you have treated me damned badly."

W. B. Killebrue says, as Nelms and he were sitting in the court-house yard, Dyson came in sight; Nelms looked up, and said, "Here comes the damned son of a bitch now. I will have him in less than ten days where he won't bother me or any one else. I have got my triggers set for him." It looked

[1] 8 How., 214; 4 ib., 90; 8 S. & M., 197.

to him as if Dyson might have heard what Nelms said as he passed on.

Another witness says he heard the above, and told Dyson of it; says he heard Nelms say if Jones would attack Dyson, and Dyson denied his charges, he (Nelms) would settle it. This, also, witness told Dyson.

It was also in proof that Nelms told the witness that Turner had told him he was in danger from Dyson, and Nelms said he would give Dyson a fair fight.

Thomas B. Turner says Nelms told him Dyson was a damned rascal, and he would give Dyson a fair fight.

James M. Jones proved that Nelms never urged him to get into a difficulty with Dyson.

Anthony Foster and John R. Dickens and some others, proved that Nelms was a man of violent character.

The opinion of the court contains all the instructions commented on by the court.

The court below having refused to grant a new trial, Dyson prayed a writ of error to this court.

*Watson & Estelle* for plaintiff in error.

The errors relied upon for reversing the judgment of the court below, will be stated and considered in the order in which they occurred.

1st. The jury by whom the prisoner was tried was not duly and legally sworn.

That the record must show affirmatively that the jury was legally sworn. 1 How., 24, 30, 497; 4 S. & M., 110, 112.

On this subject the language of the record is: " Thereupon came a jury of good and lawful men, to wit (naming them), who being elected, tried and sworn the truth to speak in the issue joined, and having heard the evidence," etc. This oath was an insufficient one. For the proper form of the oath which should have been administered to the jury, see Hutch. Code, 879, § 132; 1 Chitty Cr. L., 551, 552.

Nothing can be presumed in support of the record. 1 How., 30. The record undertakes to recite the precise oath which was administered to the jury, and the oath recited being insufficient for this cause, the judgment must be reversed. The

jury should have been sworn well and truly to try the issue joined between the defendant and the State of Mississippi, and a true verdict give according to the evidence.

The oath, as administered, did not inform the jury between whom the issue was joined which they were to try; nor did it require them a true verdict to give according to the evidence. The oath was defective, therefore, in two material particulars. This objection is believed to be fully sustained by the case of Holt v. Mills, 4 S. & M. 110, 112.

2d. On the bills of exception to the ruling of the court excluding testimony. 4 S. & M., 207.

3d. The court erred in giving to the jury the first, second, fourth and seventh charges, which were given for the state, and also in the explanation which it gave of defendant's sixth charge.

As expounded by the court in this case, the law of self-defense is practically annihilated. A person may legally assail another for injuries threatened when there shall be reasonable grounds to apprehend a design to do some great personal injury, and there shall be imminent danger of such design being accomplished. Hutch. Code, 957, § 3. So, too, a man may kill another who has threatened his life to prevent such other person from carrying this threat into execution. But these obvious and plain legal propositions are denied by the charges of the court in this case.

The error in the fourth and seventh charges consists in the fact that these charges make it essential that an actual felony should be about to be committed, or a design to do some great personal injury, in order to justify the killing in self-defense; whereas the law gives the right of self-defense upon a reasonable apprehension of these things.

On the law of self-defense, see Barb. Cr. Tr., 40, 41 ; 1 Russ. on Cr., 451, n. ; 4 Ired., 415, 417; Granger's case, 5 Yerg.

The fifth charge asked by the state should have been refused. This charge, in connection with the other charges given by the court, left to the jury no discretion whatever, but required them, under the penalty of perjury, to find a verdict against the defendant. No one can carefully read over the various charges

and explanation of charges given by the court, without discovering that the jury, as to their verdict, were placed under something like *duress.*

On contradictory charges, 13 S. & M. 40.

4th. The silence of the record as to the disposition that was made of the jury on the trial of the defendant, on the adjournment of the court on the evening of the 24th of May, and also on the evening of the 25th, is a fatal objection to the judgment of the court below.

The trial by jury in criminal cases, and the rights of criminals generally, are most scrupulously guarded by the constitution and laws of the state.

By the tenth section of our declaration of rights, it is declared that, in all criminal prosecutions, the accused cannot be deprived of his life, liberty or property but by due course of law. It is also declared, by express legislative enactment, that no person shall be punished for any offense unless he shall have been duly and legally convicted thereof. Hutch. Code, 954, § 7.

On this subject the decisions of this court have sustained fully the meaning and spirit of the constitution and laws of the state, and in no single instance has this court weakened or impaired those principles of the common law, which were designed as the shield and safeguard of the personal rights of Englishmen.

It has been decided that the record must show affirmatively, that the court, trying an accused, was held at the place appointed by law, 4 How. 163 ; 5 ib. 20.

That the caption of the indictment must state with sufficient certainty the style of the court, the judge presiding, the place at which the indictment was found, and the, jurors by whom it was found. 5 How. 20.

That the record must show, affirmatively, that the accused was present during the trial. 8 S. & M., 722.

The record must show, affirmatively, that the accused pleaded in person, after due and legal arraignment. 8 S. & M., 587, 595.

From the foregoing decisions, it will be seen that this court has never indulged in any inference or presumption to sustain the action of a circuit court in a criminal trial, where such action

involved the legality of the proceedings of the court in reference to a matter of judicial duty touching the rights of the accused.

In several of the states of the Union it is held to be in the discretion of the court to permit the jury charged with a criminal case to disperse or separate during the trial (15 Ohio, 72); whilst in this state, the separation of the jury without the consent of the accused, has uniformly been held to be error, for which a verdict against the accused will be set aside. 13 S. & M., 398.

In Virginia, it is held, that before jurors, elected by the prisoner, have been sworn, and the jury fully made up, they need not be committed to the care of an officer, 11 Leigh, 714. Whilst in this state it is held, that in a criminal case, where a juror is elected, he must remain under the care of the court before, as well as after, he is sworn, 8 S. & M., 587.

It has been also held, that no special oath need be administered to a sheriff, to whom a jury, in a criminal case, is committed during the trial, 8 Leigh, 745. Whilst in this state it has been repeatedly decided, that it is the duty of the court to swear an officer to take charge of the jury. 4 How., 196; 13 S. & M., 402.

In several of the states it is held, that after judgment, no advantage can be taken of the want of a prosecutor; whilst the contrary is the settled law of this state, as established by the decisions of the court.

There are many matters not entering necessarily into the record of a criminal case, as to which, until the contrary is shown, the action of the court will be presumed to have been correct. This principle explains all the cases on this subject relied upon by the state.

But this principle has never been applied by this court to any matter constituting a necessary part of the record, or which, upon the principles of the common law, it was necessary that the record should show affirmatively; as that the court was held at the proper place; that the grand jury and petit jury were sworn; that there was a prosecutor marked; that the prisoner was in court during the trial.

The law is, not only that the jury shall remain in charge of

the court or a sworn officer, but that the record shall show affirmatively that this was the case. To the care and custody of the jury the law applies the same rule that it does to the place where the court was held; to the swearing of the grand and petit jury; to the name of the prosecutor; and to the personal presence of the prisoner during the trial. The fact must not only exist, but the record must show it. 6 Term R., 246; 1 Chitty Cr. L., 632; 2 Hale P. C., 296.

The cases in 11 Blackford, 20, and 8 Leigh, 745, do not go to the extent of sustaining the judgment in this case. In those cases the record contained the statement that the jury was committed to the care of the sheriff, with instructions, etc. And in the absence of this express statement, it is certain that those cases would have been reversed. 2 Black., 475; 8 Leigh, 745.

Even the case in 2 Gillman, 551, concedes the common law rule; and the decision there made is placed on grounds to which this court can give no countenance without a departure from the principles and spirit of its previous decisions. 4 How., 187, 196; 8 S. & M., 587, 596; 9 ib., 465, 467, 468, 469; 13 ib., 259. See 2 Metcalf, 18, 19; 18 Johns., 212, 217, 118.

The following references are to cases in which the very question under consideration was decided. 2 Cain, 373; Johns., 2 Blackf., 475.

In Bennett's case, 8 Leigh, 745, in which the record states that the jury was committed to the care of the sheriff, who was charged, etc., but omits to state that he was sworn, the majority of the court who sustain the judgment, place their decision on the ground of the practice in Virginia; whilst the minority, who were for deciding the case on principle and authority, were for the reversal of the judgment. The dissenting opinion in this case is able and lucid, and the attention of the court is respectfully invited to it.

In Hare's case, 4 How., 193, Chief Justice Sharkey, in delivering the opinion of the court, quotes with approbation from 12 Pick., 496, this language:

" It is a well-settled rule of practice incident to all jury trials, that, after the jury are charged and have left the court to consider of their verdict, they are to be kept by themselves, with-

out refreshment and without communication with others, until they have agreed. Any departure from this rule is an irregularity."

In the same case the chief justice says: "It is the duty of the court to swear an officer to take charge of the jury; his oath is, that he will not speak to them or permit others to do so." 4 How., 196.

In McQuillen's case, 8 S. & M., 587, the record shows that a portion of the jury was selected, though not sworn, when the court adjourned until the next day, and the record then proceeds:

"And thereupon the persons selected as jurors were charged according to law, and required to be in attendance the next morning, at ten o'clock." Page 589.

After this the jury was sworn, without objection, and a verdict of guilty found against the defendant.

A motion was then made for a new trial, but it does not appear from the case as reported, whether or not one of the grounds of this motion was that the persons elected as jurors on the first day, were permitted by the court to disperse until the next day. This was one of the errors, however, assigned in this court, and it was sustained.

The court say: "It is thirdly assigned that seven of the jurors were tendered to the prisoner, and elected, and permitted to disperse until the next day, without having been sworn, and that they were not sworn until the next day when the panel was completed. The record shows this to have been the fact, and it is a palpable error. When a juror is elected, he must remain under the care of the court or an officer, before as well as after he is sworn, and it is error to permit the jury to disperse without the consent of the prisoner."

Passing over a few sentences, the court add: "Perhaps the prisoner had a right to object to them the next day, before they were sworn; if so, they should have been retendered to him. But even if he had such rights, it did not cure the error in permitting them to disperse." 8 S. & M., 596.

The case is submitted as an authority directly in point. If, when the record shows that the jurors were charged according

to law, and required to be in attendance the next morning at 10 o'clock, it shows, in the absence of all other proof, that the jurors were permitted to disperse; much more is it shown by the record under consideration, which shows that the court adjourned from day to day, without making any disposition of the jury, and which states affirmatively, that on the evening of the third day of court, " the jury not agreeing, were committed to the care of their officer, and were adjourned over until to-morrow."

At the close of the first day, the record says : " The day being expired, this cause is continued till to-morrow."

On the next day, the record says: " Thereupon came the jury impanelled and sworn on yesterday," and proceeds thus : " The cause being fully argued, the jury retired to consider of their verdict."

And on the next day, the record states, among other things : " And also came the jury, etc., who, not agreeing, were committed to the care of their officer, and were adjourned over until to-morrow."

Now, on this state of the record, is there room for the inference or supposition, that the jury, on the first and second adjournments of the court, was committed to the care of a sworn officer?

The statement that, on the evening of the third day, the jury was committed to the care of an officer, leaves the implication a necessary one, that prior to this time no such disposition had been made of it; and, in this connection, it is an important consideration, that one of the grounds assigned in the court below for a new trial is, that " the jury were not kept together as the law requires." This objection having been thus raised in the court below, when it was competent for the court to have changed or amended its record, so as to make it conform to the truth of the case, can it now be supposed by this court that the record does not show the entire action of the court below in the premises?

In Carpenter's case, 4 How., 167, it was urged upon the court to presume that the circuit court, in which the accused had been convicted, was held at the proper place, when the record was

silent on the subject; but to this it was replied by Mr. Justice Smith, who delivered the opinion of the court:

"It (that is, the place where the court was held,) is not directly expressed, and no presumption can be indulged which contradicts the record; nor are we warranted in the assumption of any fact which is not necessarily included in that which is expressed."

Now, apply this rule to the present case, and the presumption that the jury from the first were regularly committed to the charge of a sworn officer, is certainly cut off. That the jury was thus disposed of during the adjournment of the court, for the first two days, is certainly "not necessarily included in that which is expressed."

In McCann's case, 9 S. & M., 465, Mr. Justice Thacher, in delivering the opinion of the court, states the practice of criminal courts "according to the forms anciently established at trials;" and gives the form of the oath administered to the bailiff who takes charge of the jury when they retire. He suggested it as probable that it might be held sufficient for the officer to be sworn at the commencement of the term, to take charge of all the juries, and then adds:

"The trial by jury, so justly prized, should be scrupulously preserved inviolate, as guaranteed by the constitution, and protected against encroachments in all its essential attributes; and every change or modification of form should be admitted only when found to be absolutely necessary to meet the changes of society and the times. Its very forms being designed to protect it from innovation, are said, in 4 Black. Com., 320, to be sacred, and not to be dispensed with." 9 S. & M., 468.

Now, in 6 Term R., 531, the form of the proper entry of the swearing of the bailiffs to take charge of the jury, and of the disposition made of the jury on the adjournment of the court, is given, and these forms all the common law authorities require to be substantially observed; but in this case, the forms of the law, which has ever been held to be the evidence of what the law is, are proposed to be wholly overlooked, or to be supplied by intendment or presumption.

In McCann's case, 9 S. & M., 469, the case of Jones v. State,

2 Blackf., 475, is quoted, in the opinion of the court, as an authority to be followed. This case in Blackford, it will be remembered, arose upon a record which was silent as to the disposition made of the jury by the court on its adjournment; and this silence was held to be fatal to the judgment.

In Boles' case, 13 S. & M., 402, Chief Justice Sharkey, in delivering the opinion of the court, says : " The rule of the common law is, where the jurors depart from the bar, a bailiff must be sworn to keep them together, and not suffer any one to speak with them. This is a plain, practical and safe rule. It cannot be mistaken and is easily followed. Any departure from it is a violation and leads to confusion and difficulty in which there is no rule of law to guide us. Each departure may make a new case for the discretion of the court, for, when there has been a departure from the given rule, the verdict must depend upon the discretion of the court."

The truth of this language is fully verified by the experience of several of the states. In Ohio, New Hampshire, Vermont, Virginia, and some of the other states, this doctrine of the discretion of the courts, with reference to jury trials, is prevailing and growing. But in this state, so far, this doctrine has found no foothold or countenance; and it is certainly to be hoped that, if it is ever introduced, it will not be by "judicial legislation," but by legislation proper.

It is respectfully submitted that, if in this case the presumption can be indulged that the jury was from the first committed to the charge of a sworn officer, when the court adjourned for two evenings without making any entry on its minutes about the jury, and when it is nowhere stated in the record that any officer ever was sworn to take charge of the jury, or that the jury ever was committed to the sheriff (from the third day onwards, the language of the record is, that " the jury was committed to their officer," without saying who this officer was or that he was sworn), the precedent will be set for presuming in future, where the record is silent, that the court was held at the place appointed by law ; that the jury in every case was sworn ; that in every criminal case there was a prosecutor ; and that the prisoner was duly arraigned and was in court during the whole time

of the trial. The court is no more required to see to these matters, than it is to see to the proper care and custody of the jury during the progress of a criminal case. Nor can any reason be assigned for requiring the record to state affirmatively any one of the foregoing matters, which does not apply with equal force to the care and custody of the jury.

*D. C. Glenn,* attorney general.

1. It is not "made to appear" that the court erred by any thing contained in the bill of exceptions. The rule of presumption, therefore, makes good the proceeding below. Briggs v. Clark, 7 How., 457 ; Robinson v. Frances, 7 ib., 458 ; Smith v. Berry, 1 S. & M., 321 ; Pender v. Felts, 2 ib., 535.

2. The bill of exceptions does not show or set out the testimony which was rejected by the court below. Harris v. Newman, 5 How., 654 ; Bone v. McGinley, 7 ib., 671.

Witness Turner was asked if he knew anything of an attack made on the defendant, by one Jones, the day before Nelms was killed ; and if so, to state what took place on that occasion.

The bill of exceptions does not show how such proof was pertinent to the issue joined, and it was properly ruled out as being irrelevant. State v. Wisdom, 8 Porter, 511 ; Stone v. State, 4 Humph., 27 ; and many others.

Several witnesses who had deposed to the violent character of the deceased, were asked if they had communicated their knowledge to the accused. The court refused to allow them to answer.

The question asked was not an admissible one. On the trial of an indictment for homicide the general rule is, that the character of the deceased is not in evidence. In some one or two instances, when the nature of the offense committed was very doubtful, the general character of the accused has been drawn into evidence. But the rule undoubtedly is, that the character of the deceased can never be made a matter of controversy, except when involved in the *res gestæ ;* for it would be a barbarism to allow A. to give as a reason or excuse for killing B., that B. was a savage and riotous man. The state was forbid to prove murder was a familiar thing to Dyson as an excuse for hanging him. So the defendant may prove that he was acting in self-

defense in this particular case, or he may exhibit whatever provocations were given him at the time by the deceased ; but he cannot set up general reputation as a defense. State v. Field, 13 Maine R., 248 ; Com. v. York, 7 Law R., 507 ; State v. Tilley, 3 Ired., 424 ; and many others.

3. On the charges only two points arise :

Threats against Dyson by Nelms were in evidence before the jury. The defense attempted is, that it appeared from the threats that Dyson's life was in danger from Nelms, and consequently that, to save his own life, he was compelled to take the life of Nelms; and, therefore, the homicide was excusable or justifiable.

The law on this subject, as it exists in Mississippi, is as follows :

It is so when committed in defense of a person, " when there shall be a reasonable ground to apprehend a design to commit a felony or do some great personal injury, and there shall be imminent danger of such design being accomplished." Code, 957.

At common law the same doctrine was thus expressed and explained at the same time :

" But a bare fear of any of these offenses, however well founded, as that one lies in wait to take another's life, unaccompanied by any overt act indicative of such intention, will not warrant him in killing that other by way of prevention. There must be an actual danger at the time." 1 East Cr. L., 271, 272, 293, 294 ; Russ. Cr., 513, 517.

The same is found in Foster, Hale, Hawkins, Chitty, and Blackstone, in the same language.

It is also expounded and practically applied in cases where threats were proven and self-defense set up as an excuse; cases far less hideous in their general features than the one at bar. State v. Scott, 4 Ired., 409 ; Wiltberger's case, 3 Wash. C. C. R., 522 ; 3 Eng., 451 ; 8 Humph., 671 ; 2 Hill S. C. R., 619.

In this case I will even admit the correctness of the law laid down in the celebrated case of Grainger, 5 Yerg. R. There the party was excused on the score of ungrounded fears and cowardice in the presence of an apparent assailant. The

case at bar is simply one of cold-blooded and deliberate assassination.

The facts of this case will uphold the charges of the court. They show the commission of the most deliberate murder which record of crime has for a long time furnished.

Exception is taken to the charge given by the court for the state. The substantive meaning of this charge is, that jurors should regard the law as expounded to them by the court. Of course, the jury have the power to disregard the law in their finding, as they have the power to disregard the evidence in the case. If so, however, they disregard the obligation of their oaths.

This subject has been carefully examined by Judge Story. He says that, if he thought the jury were the proper judges of law in criminal cases, he should feel it to be his duty to abstain from the responsibility of giving the law in charge to them upon any such trial. That he holds it the most sacred constitutional right of every party accused of crime, that the jury should respond as to the facts, and courts as the law of the case, and they cannot act otherwise without a violation of their sworn duty. This is most certainly the doctrine of common sense, and safest for the state, the accused, and general purposes of justice. U. S. v. Battiste, 2 Sumn., 243; Com. v. Knapp, 10 Pick., 477; U. S. v. Shive, 1 Bald., 512.

I contend, this court will not entertain these questions now, as the same were not raised in the court below by motion in arrest, demurrer, or otherwise.

In many cases this court has so held. I will cite them before assigning a general rule for the rule in this case:

In the case of Loper v. State, 3 How., 432, the record showed that the prisoner, on his trial below, was not served with a copy of the indictment and a list of the *venire,* two days before his trial, as is expressly commanded by law. The point was raised in the high court. It said, " as the prisoner made no objection in the court below, he cannot object here." Such was the decision of this court in Johnson's case, Walker, 396, and Shæffer's case, 1 How., 238.

In the case of Brantley, 13 S. & M., exceptions were taken to

the grand jury in this court.  Judge Clayton says: "No objections were taken to the grand jury in the court below by plea or otherwise.  We cannot, in this court, after a plea of not guilty and trial without objection, go back to look for defects in the organization of that body."

In Walker, 540, C. J. Turner says: "We can only reverse for errors which were excepted to, and none other."

In 4 How., 90, the court says: "It is a general rule, subject to very few exceptions, that a party shall not be permitted to assign for error in the appellate court, matter not insisted on in the court below."  The court says: "This principle was adopted in Randolph v. Goss, 3 How., 214, and it will be adhered to as one which is essential to maintain the true purposes of an appellate jurisdiction, and prevent injustice and oppression."  Neely v. Planters' Bank, 4 S. & M., 116; Sessions v. Reynolds, 7 ib., 730; Doe v. Natchez Insurance Company, 8 ib., 197; Ferguson v. Oliver, ib., 332; Rabe v. Fyler, 10 ib., 440; Talbert v. Melton, 9 ib., 9.

I have examined nearly every important case relied on to support the point, and I find they do not conflict with my position, as in every instance the objection was made in the court below, and thus came before the appellate tribunal in a shape proper to be decided.

It was so in each of the following cases, in which points similar to these under discussion were raised.  3 Halst., 298; 5 ib., 348; 2 Bay., 451; Peck. R., 165, 166, 308; McCord, 301; 1 Murph., 181; 5 How., 20; 2 Humph., 451; 5 Cow., 283; Hare's case, Carpenter's case, Boles' case, in this state.

But one case makes the points as here made, and decides them against the state.  It is the case of Jones v. State, 2 Blackf., 475. I submit this case is not an authority.

I meet its authority and utterly overturn it by the sound and powerful reasoning contained in the following cases in other states.  McKinney v. People, 2 Gilm., 551; Pate v. People, 3 ib., 657; McClure v. State, 1 Yerg., 218.

As to the general correctness of the rule, in regard to the caption of the indictment, see, in addition to the foregoing cases,

State v. Wasden, 2 Tay., 163 ; Kirk v. State, 6 Mis., 469 ; Waccalakshee's case, Morris, 332.

And as to the neglect of the care of the jury, see in same way, 8 Leigh, 745 ; 7 Blackf., 20 ; 11 Ohio, 474 ; 13 ib., 492 ; 15 ib., 72.

In regard to the oath of the jury, see Judah v. McNarree, 3 Black. R. ; Clifton v. Mann, ib.  Citing a criminal case, State v. Jones, 5 Ala., 72 ; State v. Pile, 5 ib., 666 ; 1 How., 215 ; " Code ; " Thacher Crim. C., 118.

In conclusion, I maintain that, in the language of Judge Trotter, " in order to preserve the true purposes of an appellate tribunal, and to prevent oppression and injustice," this court will refuse now to listen to all these objections not raised in the court below.  Give the state some repose ; let at least that be considered as rightly done, of which no one was ever heard to complain.  Under our system we give the accused every advantage compatible with bringing him to trial at all.  Every presumption is in his favor, and every doubt weighs for him.

He has his counsel and his witnesses, and every avenue to a successful defense is thrown wide open.  He can plead in abatement, demur, and move in arrest of judgment.  He can take his exception at every step in the cause, and fix judicially every fact which he conceives to his prejudice.  He can move for a new trial, and on its refusal can embody all his evidence and have a trial, *de novo*, in the appellate court.

To the state, no error is allowed, or appeal given.  Though an ignorant judge may set at defiance the law, or a corrupt jury set at defiance both the law and the evidence, yet the state is powerless.  From a community, by its own courts, is withheld every privilege which is extended to an individual, though he has broken and outraged every law common to the whole.

I ask, then, under all these circumstances, if it is not most unequivocally to encourage and invite a fraud upon all the privileges which the benign spirit of our law has secured to the accused, a fraudulent tampering with the courts of the country at this stage and in its forum, to allow exceptions, such as those now urged, to prevail over the demands of justice ?

All I ask is that this court will carry out and give full weight

to the principles expressed by Judge Trotter in the case of Loper, and by Judge Clayton in the case of Brantley, and uphold the sound and conservative doctrine of Judges Lockwood and Treat of Illinois, and Judge Catron of Tennessee.

HANDY, J.:

This case has been submitted on the re-argument very fully and elaborately, and we shall confine our present examination to the points therein presented in behalf of the plaintiff in error.

1. It is insisted, in the first place, that it appears by the record that the jury were not properly and legally sworn.

The opinion of the court on this point delivered on the former argument, seems to proceed on the assumption that the full oath, as administered to the jury, is stated in the record, or intended to be stated, a view which we have not been able to take. And had the oath administered been properly and fully shown in the record, and contained nothing more than is embraced in the statement of it in the record, we should be strongly inclined to hold it insufficient. It would not embrace the important duties required of the jury, and would be a wide departure from the just and comprehensive oath so necessary to injoin upon them the faithful discharge of their solemn responsibilities, which, for ages past, has been sanctioned by wisdom and experience, and has received almost universal adoption at the present day. But we cannot think that the oath here was intended to be set out in the form or entire substance in which it was administered, or that it was necessary to set it out for the purposes of the record of proceedings in the court below.

It is not the duty of the clerk, in making up the record of the proceedings in a cause, to set out the oath administered tŏ the jury. All that is required of him, in this respect, under the law as settled by this court, in reference to courts of general jurisdiction is, that the record should show that the jury were sworn according to law.[1]   1 How., 24; 3 ib., 497. And we are

[1] Archbold Cr. Pr. & Pl., 624; Harriman v. State, 2 Greene (Iowa), 270; Patterson v. State, 2 Eng., 59; Warren v. State, 1 Greene (Iowa), 106; Bell v. State, 5 Eng., 536; Sanford v. State, 6 Eng., 328; State v. Jones, 5 Ala., 666; State v. Pile, ib., 72; State v. Rollins, 2 Foster, 528; Russell v. State, 10 Tex., 288; Archbold, 542; 1 Bishop Cr. Procedure, 918; Bivens v. State, 6 Eng., 465; Drake v. Brander, 8 Tex., 351; Arthur v. State, 3 Tex., 403; Pierce v. State, 12 Tex., 210; Wrocklege v. State, 1 Iowa, 167.

not disposed to extend this rule beyond its strict limit. If he undertakes to state other things connected with the administration of the oath, these additional statements would be unofficial and not properly a part of the record. The general rule in relation to acts of this character will be found in the cases referred to in 3 Phil. Ev. (Cow. & H. ed.), 1045, 1046, 1083. The statement of the oath administered, is no more a part of the duty of the clerk, than it is his duty to incorporate it in any document or deposition offered in evidence in the course of the trial. In the case of Barfield et al. v. Impson, 1 S. & M., this court says: "We cannot notice a mere certificate of the clerk that this or that evidence was introduced; the certificate of the court is required." And in Abbott v. Hackman, 2 S. & M., 510, it is said: "This court is bound to presume the judgment of the court below correct, unless, from a review of the grounds of such judgment, certified to by the court, manifest error is apparent." 4 How., 222; ib., 431. If a document offered in evidence in the cause cannot be made a part of the record by the mere act of the clerk, much less could his mere statement of its substance be treated as a part of the record, and that is what is here attempted.

If, then, the swearing of the jurors is improper in any respect, the objection must be presented by bill of exceptions, and unless it is so presented, if sufficient evidence appears of record to show that the jury were sworn, it must be presumed that they were *legally* sworn. This principle is distinctly held in the cases in this court just cited; and in Barfield et al. v. Impson, the court says: "That (the bill of exceptions) affords the only evidence which we can recognize, of what takes place upon the trial; and we are bound to presume the proceedings of the court below to be correct, unless by the bill of exceptions we are furnished with evidence to the contrary." This rule we think altogether applicable to the present objection. It is the true rule in relation to courts of general common law jurisdiction, but it does not apply to courts of special and limited jurisdiction; and for this reason, the case of Holt v. Mills, 4 S. & M., does not sustain this objection. That was a case of unlawful detainer, a matter of special and statutory jurisdiction, in which the oath re-

quired to be administered is prescribed in the statute. Moreover, the oath actually administered is fully set out in the record, and shown not to be in conformity to the statute. And the court says, "in this proceeding, if the oath is set out, and is not such as the law requires, the verdict cannot stand."

In the present case, it appears manifest that it was not intended by the clerk, as it was no part of his duty, to set out the oath in the manner and form used in administering it to the jurors. The statement is by way of recital, thus : " And thereupon came a jury of good and lawful men, to wit," etc., " who being elected, tried, and sworn the truth to speak in the issue joined," etc., referring to what had previously taken place, in order to show that an oath had been administered, rather than to state its form or substance. It is a memorandum relative to a proceeding in the case, made after the fact had transpired, and not the record of the very thing done at the time, and in the manner and form in which it was done.

Great strength is given to this view of the subject, by referring to the practice and precedents touching it. It is conceded that in England, the form of oath, as contended for by the counsel for plaintiff in error, is adopted. It also prevails in practice in Virginia and Maryland. 3 Rob. Va. Prac., 174 ; 2 Harris, Ent., 282. Notwithstanding this, and though this form of oath has been duly administered in empanelling the jury, yet, when the record of the proceedings is being made, the entry of swearing and empanelling the jury is made nearly in the very terms contained in this record. Blackstone has the entry as follows : " Who being elected, tried, and sworn to speak the truth of and concerning the premises." 4 Black. Com. Appendix. Robinson has it thus : " Who being elected, tried and sworn the truth of and upon the premises to speak." 3 Rob. Pr., 177. Harris has it thus : " Who are sworn to say the truth in the premises." 2 Harris, Ent., 293. The distinction between the fact of the oath actually administered to the jurors, and the reference afterwards made to it as a part of the history of the case by the clerk in making up the record, is clearly shown by these precedents ; and they are certainly authorities of high character.

Justified by these precedents, a practice has grown up in this

state to make up the records of jury trials after the manner of the record in this case; a practice in violation of no principle, and in keeping with the proper office of the clerk in making up records of such proceedings. The records of this court show, that this mode of making up such records, has become the established practice of the state. It has ripened into general usuage without objection, and the instances are numerous where men have suffered the extreme penalty of the law under its operation. If it were unsupported by precedents from other states, this court would hesitate long before it would hold, considering the nature and office of such an entry in the record, that for such an inaccuracy, if it should be one, the trial in the court below should be treated as illegal and nugatory. But, sanctioned as it is by precedent, and no right of the accused or rule of law being sufficiently shown to be violated, we cannot hesitate to say that it constitutes no ground for reversing the judgment below.

Again, no objection to the oath, as administered, was made in the court below; and the very universality of the adoption of the form urged by plaintiff's counsel as the proper and legal oath, renders it almost certain, that if it had been so materially departed from on the trial in this case, as is inferred from the reference to it in the record, objection would have been made to it.

But it is urged, that the record must affirmatively show that the jury were regularly sworn, and that such has been the ruling of this court.

It is undoubtedly true, that the record must affirmatively show those indispensable facts, without which the judgment would be void, such as the organization of the court; its jurisdiction of the subject matter, and of the parties; that a cause was made up for trial; that it was submitted to a jury sworn to try it (if it be a case proper for a jury); that a verdict was rendered, and judgment awarded. Out of abundant tenderness for the rights secured to the accused by our constitution, to be confronted by the witnesses against him, and to be heard by himself or counsel, our court has gone a step further, and held that it must be shown by the record that the accused was present in

court pending the trial. This is upon the ground of the peculiar sacredness of this high constitutional right. It is also true, as has been held by this court, "that nothing can be presumed for or against a record, except what appears substantially upon its face." But this rule has reference to those indispensable requisites necessary to the validity of the record, as a judicial proceeding, and can have no application to those incidental matters, which transpire during the progress of the proceeding in court. For otherwise, what would be the limit to the rule? There could be none short of requiring every thing that was connected with the trial, the summoning of the jury, the facts touching the examination and empanelling of each of them, the summoning of witnesses, their oath, the course of their examination; in short, every matter, however trivial, to be set forth in the record. No such details are required by justice or law. If irregularities occur in relation to any of them, the party aggrieved is not without remedy. He can introduce them into the record by bill of exceptions; but otherwise the rule is, as to all incidental acts which transpire on the trial, *omnia præsumuntur rite et solemniter esse acta, donec probatur in contrarium.* See instances of this application of this rule to judicial proceedings in Best on Presumptions, 79.

In addition to this view, the bill of exceptions, taken upon overruling the motion for a new trial, states that after the defendant had been arraigned, a jury was "selected and sworn to try the issue joined," etc. This statement in the defendant's own bill of exceptions, taken together with his failure to raise any objection on the trial to the oath administered to the jurors, when the oath alleged to have been administered would have been so unprecedented, greatly strengthens the legal presumption, and must remove all doubt from the mind that a formal and sufficient oath was administered, and that the present objection is an afterthought, founded on the mere reference by the clerk to an act previously and formally done.

2. The second error assigned is the exclusion of the question propounded to the witness Turner, inquiring what took place on the occasion of an attack made by one Jones, on the defendant, on the day Nelms was killed.

Upon its face, this question has not the most remote connection with the point in issue, the killing of Nelms by Dyson. The bill of exceptions presenting the objection, shows nothing but the questions asked and overruled, and contains nothing from which a connection could possibly be justly inferred. This court cannot, then, presume upon the possibility, that the question might have some pertinency to the cause. As it was presented, it was clearly irrelevant, and the defendant has failed to show its relevancy by anything either in the special bill of exceptions in relation to it, or in the general bill of exceptions setting out the whole evidence. No connection whatever, anywhere appears between the attack of Jones upon Dyson, and the killing of Nelms by Dyson. If, as is contended, the witness might have proceeded in answering the question to connect Nelms with Jones, in the attack upon Dyson, and then to show the connection of that transaction with the killing of Nelms by Dyson, is it not strange that the witness was not interrogated afterwards, and in some form, whether Nelms was connected with the attack of Jones upon Dyson? This inquiry would have been unobjectionable, and it is not to be supposed that all effort to prove facts alleged to be so important in the defense, would have been abandoned simply because a question not showing the connection of the evidence with the case on trial, had been rejected. This court cannot know what the testimony proposed to be brought out was; but for all that appears in the record, we cannot say but that the court acted correctly in sustaining the objection.

But it is said that the objection was improperly sustained because it was general. The ground of the objection or the reasons urged in support of it are not stated, but it is not in every instance necessary to state the reason for an objection to a question; for it may be so palpably illegal as not to require reasons to be stated against it. No settled practice seems to be established as to the manner in which objections in such cases should be made. But if an objection be made, and either allowed or overruled, the ruling of the court below will be sustained in the appellate court, if in any point of view regarding the whole record, the question allowed or overruled was legal and proper,

or illegal and improper, as the case may be. It is true that a party is not compelled to adopt any particular order in the introduction of his testimony. But if evidence is proposed, which of itself appears to be foreign to the issue on trial, and it is objected to, it is incumbent on the party offering it to show its relevancy, either by explanation to the court as to its bearing on the case, or by introducing other evidence connecting it with the *res gestœ*, and opening the door to its admission. Otherwise the most prejudicial testimony might go to the jury, the effect of which it might be impossible fully to destroy by instructions of the court to disregard it. And for obvious reasons, the rule confining the evidence strictly to the point in issue, is more rigidly applied in criminal cases.[1] 2 Russ. on Cr., 772.

It will not do to say that the evidence may be shown, by subsequent developments, to be immediately connected with the *res gestœ*, for of this the court can know nothing, unless brought to its notice by a proper showing of its connection.

3. Again, it is urged that the court erred in granting the 7th instruction asked in behalf of the state, and in qualifying the 2d instruction in behalf of the defendant. The 7th instruction is as follows: " That a bare fear that a man's life is in danger from the violence of another, however well founded, and whatever may be the character of the man feared, as that such man lies in wait to take away the life of the party, unaccompanied by any overt act indicating an intention immediately to kill such party or to do him some great personal injury, will not warrant him in killing that other, by way of precaution, if there is no actual danger at the time of killing; that both the design to commit a felony, or to do such person some great personal injury, and the imminency of the danger of such design being carried into execution, must both exist to warrant the man thus in fear of his life to kill, and that imminency of danger means danger at the time of the killing."

The explanation of defendant's 2d charge is as follows: " In explanation of defendant's 2d charge, that although a party is not bound to retreat in some cases, and may pursue his adver-

1 1 Greenl. Ev., 65; Roscoe Cr. Ev., 73; 1 Deacon's Dig. Cr. Law, 459, 460; 2 East P. C., 785, 1201; 1 Phil. Ev., 506; Rex v. Watson, 2 Stark, 116, 155; Lord Melville's case, 29 How. St. Fr. 376; Russ. on Cr., 588; U. S. v. Brittain, 2 Mason, 464, 468.

sary until he is out of danger, yet this only applies when there is immediate danger of a felony, or some violence being committed by the party killed."

Without an extended recital of the evidence on the trial, it is sufficient for the present purpose to say that the testimony on the part of the prosecution characterized the killing of which the defendant stood charged, as premeditated, malicious and aggravated to an extraordinary degree, the defendant lying in wait and shooting the deceased as he passed unsuspectingly along the highway. The only evidence in justification or mitigation of the deed, consists of proof that the deceased had had a grudge against defendant; had made threats against his life; was a violent and desperate man, and that defendant's life was in danger at his hands. It therefore became necessary for the court to declare the law arising upon the facts alleged to constitute a justification or extenuation of this deed, and I see nothing in the rulings of the court in doing so, in violation of law or sound policy.

By the rules of the common law, in order to justify the killing, bare fear of danger or great bodily harm, unaccompanied by any overt act indicating a present intention to kill or injure, would not warrant a party in killing another. There must have been actual danger at the time. 1 East, Cr. Law, 271, 272.

Our law renders the act justifiable: " When committed by any person in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress or servant, when there shall be a reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and there shall be imminent danger of such design being accomplished." Hutch. Code, 957, § 3.

The only modification of the common law made by this statute, consists in the justification extended to the accused " when there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury," instead of the old rule requiring " actual danger at the time." But it is not the intention of the legislature to dispense with the necessity of showing some overt act indicating a present intention to kill or do some great personal injury, and that the danger thus

indicated, was imminent at the time of the killing. It was intended to alter the rule of the common law so far as to justify a party acting conscientiously upon reasonable fears, founded on present overt acts to all appearances hostile, although there was really no actual danger. If this were not so, what is to constitute "reasonable grounds of apprehension?" By what limit is this dangerous rule to be defined? Must this reasonable ground of apprehension be founded on a present and immediate emergency, unavoidable to the party, or may it consist of mere fear, which though reasonable, all danger may be avoided? Are we to refer the reasonableness of the grounds of apprehension to the judgment or feeling of the party implicated, and not to a just and dispassionate standard? The peace of society and the security of life require that "the reasonable grounds of apprehension," as justifying homicides, should be limited as strictly as possible to the right of self-defense, and this seems to have been properly regarded by the court below in the instructions under consideration.

In substance, the entire instructions in the case, as given by the court, contain the following principles:

First. That, in order to justify killing, there must be some overt act indicating a present intention to kill the party, or to do him some great bodily injury.

Second. That the danger of such design being accomplished must be imminent, that is to say, immediate, pressing, and unavoidable at the time of killing.

Third. That mere fears of a design to commit a felony or to do some great personal injury to the party, though honestly entertained, unaccompanied by any overt act indicating a design immediately to commit the felony or to do the injury, will not justify the killing.

And this exposition of the law meets my approbation as the law of this case, and the sound and salutary rule for the protection of society.

4. The last objection presented for our consideration is, that the jury were allowed to separate after they were sworn, and during the time they were deliberating of their verdict, and were not kept together.

By reference to the bill of exceptions, taken upon the motion for a new trial, it appears that there is no evidence tending to show a separation of the jury, or any act of impropriety on their part, nor is there any thing shown calculated in the least to impeach or cast suspicion upon their verdict. But it is insisted, that, inasmuch as the record shows that the jury were several days deliberating of their verdict, and it does not affirmatively appear by the record that they were duly kept together, during all that time, under the charge of a properly sworn officer, this is sufficient to set aside the verdict; that the disposition made of the jury must be shown by the record, and makes a necessary part of it; otherwise the verdict is erroneous.

We do not think this position well founded, either on principle or sound authority.

We have already adverted to those acts of the court which are required to appear affirmatively of record, by which it appears that every incidental act connected with the trial, and which transpires during its progress, is not necessarily to be incorporated in the record. If this were not true, every important fact, without which a verdict and judgment could not be rendered, must positively appear on the record; the swearing of witnesses, the evidence to support the verdict, and every minute act which the convenience or necessities of the jury would require to be done in the course of a greatly protracted trial. It is said that these are matters *in pais,* and, therefore, not a part of the record. But we cannot perceive how the swearing witnesses, or the fact of the admission of evidence, or the evidence itself as admitted, are matters *in pais,* but the disposition made of a deliberating jury is matter of record. They are equally acts of the court, and the former are more strictly matters of judicial action than the latter, and at least equally necessary to a proper and legal judgment. And it may be remarked in reference to all the instances of judicial action, adduced by the counsel for the plaintiff in error, necessary to appear of record, that they are examples either in relation to the organization of the court, or its jurisdiction of the subject-matter or of the person, or held by this court to be matters of so solemn a judicial nature, or of such high constitutional right, as to form an exception to

the general rule.    These instances have been above alluded to, and we are not disposed to extend exceptions to the rule further than has already been done by this court.

It is a firmly established and wise maxim of the law in relation to the acts of public officers, and especially of judicial tribunals acting within their jurisdiction, that all things shall be presumed to be done rightly until the contrary is proved.    This is a rule of convenience, because it dispenses with unnecessary prolixity, and the incorporation of immaterial matter in the record.    It is a rule of justice and safety, because it prevents advantage being taken of acts that have been legally and formally done, but the recital of which in the record might be inartificial, and tend to prevent justice by informality; and we know of no class of judicial duties to which the reason and propriety of the rule has more just application than to criminal trials, which, from their nature, constantly give rise to strange and novel proceedings.

The justice of applying this principle to the objection under consideration, is forcibly shown by the history of this case, as it appears of record.    In the court below, the objection was to the fact of separation.    No suggestion or showing whatever was made, on the motion for a new trial, that the fact then alleged was true; and if it was made, it must have been shown not to be true, for the defendant's counsel omitted all notice of it in the bill of exceptions.    It must, then, have been abandoned or disproved on the motion for a new trial.    Nor was it pretended in the court below, as this court is asked to presume, that the jury were not under the charge of a duly sworn officer.    That court was most competent to pronounce whether that suggestion was true or not in fact, and the silence of the bill of exceptions upon that point again creates a strong presumption that no such irregularity existed, and, therefore, that no complaint was made of it.    Under these circumstances, it would subserve any thing else than the purposes of justice or law, for this court to indulge the presumption that the court below had committed so gross an outrage upon propriety, in a case of life and death, as not to place the jury under proper and legal custody.

But, although the defendant abandoned the charge of separa-

tion or want of proper custody of the jury, in the court below, or it is shown to be unfounded, yet the objection here rests upon the silence of the record, and we are asked hence to infer, that the irregularity existed. This objection is entitled to less favor, than if no objection as to the separation or custody of the jury had been made in the court below; for it not only encounters the general presumption in favor of the regularity of the proceedings of that court, but also that arising from the fact that the alleged irregularity was there objected to, and either abandoned or shown to be unfounded. The objection, therefore, now founded on the mere silence of the record about an incidental fact in the trial, certainly comes with a very bad grace. Had it been urged in the court below, it doubtless could have been corrected to suit the views of the defendant according to the fact. It is the settled law of this court, that it will take no cognizance of points not presented in the court below; 3 How., 214; 4 ib., 90; 8 S. & M., 197; and the rule applies with greater force where the point is one of fact, and was raised and abandoned in the court below. The only exceptions to this rule which this court has indulged, or which now receive its sanction, are cases where the record shows that the court was not properly constituted, or that it had not jurisdiction of the subject-matter or person, or that some judicial act so absolutely essential and indispensable to the validity of the proceeding as to be shown, in due form, to have been performed, does not appear to have been done. We do not consider the action of the court, in relation to the disposition of a jury, such a judicial act, but an incidental step in progress of the cause, which will be presumed to have been duly and legally done until the contrary is shown.

Opposed to this view, two decisions from the state of New York, and one from the state of Indiana, have been brought to our notice. 2 Caines R., 373; 11 I. R., 442; and 2 Blackf., 475. The first two cases relate to proceedings of courts of special and limited jurisdiction, upon *certiorari* from justices of the peace. In such cases, the courts of New York seem to hold that they cannot intend that any thing was done which is not stated in the justice's return, because he is required to state all

his proceedings and the whole history of the case. This is the proper rule in reference to courts of special and limited jurisdiction, but it does not apply to courts of general common law jurisdiction. 2 Phil. Ev., (Cow. & Hill,) 305; 3 ib., 1013. In the case in Indiana, it is broadly held that, as the law requires the clerk to send up a full and complete transcript of all the proceedings in the court below, the court must conclude that nothing more was done than is certified to have been done. Whatever may be the law in Indiana upon this point, the position declared in the case referred to cannot be recognized by this court as sound law. On the contrary, it has been constantly held by this court, that every fact incidental to the proceeding in the circuit court not required by law to be incorporated in the record must be presumed to have been properly done. Upon this principle, it will be presumed that the jury are good and lawful men; that they have been duly summoned and empanelled; that the witnesses, if any were produced and examined, were sworn; that there was sufficient evidence to support the verdict and judgment; and, as in this case, that the jury were legally and properly disposed of, unless the contrary be made to appear. But according to the case in Indiana, every judgment in this state, in which the record did not show affirmatively that these things had been done, could be declared erroneous, and reversed; and this court would have to retrace its steps from its earliest organization, and establish a new rule, alike unsound in practice and unsupported in principle.

This court has always manifested a sedulous anxiety to preserve the purity of trials by jury, especially in criminal cases, by setting aside verdicts, where it was shown affirmatively that the jury were not in charge of a sworn bailiff, or that strangers had been with them, or where one had separated from his fellows out of the charge of the bailiff, although no tampering or improper influence was shown to have been practiced, declaring that the mere possibility of improper influence or, irregular conduct is sufficient to vitiate the verdict. In this case there is no pretence of any such impropriety in fact, but it is insisted that we must presume that the court below failed to perform its duty in having the jury properly disposed of on its retirement, on the sol-

emn issue of life or death, a presumption in violation of established principle and the settled law of this court.

After a careful examination of the objections urged to the proceedings below, upon a re-argument of this case, we are of opinion that they show no sufficient ground for reversing the judgment.

The judgment is therefore affirmed.