## Lott *v.* State.

(Division B.    Feb. 5, 1934.)

[152 So. 488.    No. 30763.]

W. T. Weir, of Walnut Grove, Ross R. Barnett, of Jackson, and T. J. Barnett, of Carthage, for appellant.

712

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

Argued orally by **Ross R. Barnett,** for appellant, and by **W. D. Conn, Jr.,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

Ed Lott, appellant, was indicted, tried, and convicted of the murder of Dempsy Slay, and sentenced to the penitentiary for life, from which judgment he appeals.

It appears that Lott shot Slay and one Bilbro from a barn owned by Lott in which he had dug a pit in preparation for trouble with his neighbors, and that just prior to the killing of Slay, Lott fired at a Mr. Thomas who was passing, which shot attracted the attention of some neighbors. Ten or fifteen minutes later these same neighbors heard two shots, and one neighbor was in a position to see the smoke, and also saw two men fall, Slay falling first being instantly killed. Bilbro, who was with Slay, started to call for help and started back in the direction from whence they came, and was shot down by Lott. It was proven that both Slay and Bilbro were unarmed and in their shirt sleeves, and were passing on the highway in front of the house and barn of Lott, and that Lott fired on them, from the barn without any words or any warning. A number of witnesses were attracted by the shooting, and they could see the smoke from the gun coming from the barn, some of them seeing Bilbro fall, and a number of them hearing his call for help.

The men who were shot remained where they fell for a considerable time, from one to two hours. The sheriff was sent for and he came, as did also the marshal of Walnut Grove. After the officers arrived, men were displayed at points where they could observe and shoot into the barn, the sheriff instructing them not to shoot unless Lott fired; and the sheriff then tried to get Mrs. Lott to communicate to Lott the fact that he was the sheriff and would not hurt Lott, but was only seeking to arrest him, and to urge him to surrender. This Lott refused to do,

and a few minutes later fired on the assembled crowd, quite a number of shots being fired at that time in which Lott was wounded. Just prior to the shooting, Mrs. Lott had gone into the barn where her husband was, and as he started to shoot, she made an outcry for him not to do that since so many people had assembled. One man, under the direction of the sheriff, went along the side of the barn, and saw a gun barrel sticking out; wrested it away, and Lott was brought out of the barn, both he and Mrs. Lott being wounded. They were taken to jail, and later, Lott was conveyed to the hospital in Jackson, Mississippi. He made a statement to the sheriff that he dug the pit for the purpose of using it in fights; that he thought all the neighbors were against him; and that they would mob him. He stated he thought Bilbro was one Lewis. He repeated his statements to the sheriff after he was placed in the jail in Hinds county.

The only error assigned in the appeal is the exclusion of the testimony of Mrs. Lott, wife of appellant, who testified that about two weeks before the killing, Slay came to her house and asked about her husband; that she told him her husband was away, and that Slay then asked her to let him come in, and she picked up a pistol and told him to go away and he left; that she told her husband this, and he demanded of Slay that he make amends, which he refused to do; that she was not present when her husband made this demand, but she knew he had done so. She testified further that on one occasion Slay drew a gun on Lott, who fell behind a log; that her husband then took his gun and went around to the chicken house, and Slay left.

At the time this evidence was offered, there was nothing to show that Slay was the aggressor in any respect, and nothing to show anything to make the evidence admissible. Counsel stated, however, to the court, when it was offered that they expected to connect it with controversies and threats, and other demonstrations after

Slay's visit to the home of Mrs. Lott, and that the plea would be self-defense. Counsel for the appellant stated to the court, "We wish to state this to the court, that we can connect this afterwards with demonstrations of this deceased towards him with a gun, growing out of this trouble, or even until the time of the killing, on different occasions between those times, connect it and show one and the same row." The court then sustained the objection. Counsel: "Will you allow us to proceed further?" Court: "If you want to proceed further." In the absence of the jury, there was evidence to the effect that on the morning Slay drew his gun on Lott—Wednesday before the killing—Slay was outside the fence and drew his gun on Lott, who was unarmed, and he fell behind a log as stated; that Lott then procured his gun and went around to the chicken house, the witness stating that she saw Slay going down the road with a gun. The court thereupon stated as follows: "This testimony is not material to any issue involved in this case as the record stands. The objection is sustained."

The appellant thereupon took the stand in his own behalf, and testified that his wife had reported to him that Slay had insulted her; that he had demanded that Slay make amends which he refused to do; that on two occasions Slay drew a gun on him, and on the morning of the killing he was in the pit in his barn when Slay and Bilbro came along; that Slay looked in his direction and reached as if to draw a pistol; and that having seen Slay with a pistol on other occasions, he fired because he thought Slay reached for a pistol. He testified that he did not know Bilbro, and did not shoot at him, but that the shots were fired at Slay which wounded Bilbro. He further testified that all his neighbors were against him and he was apprehensive that they would mob him; that he did not know when the sheriff and marshal arrived, but thought the crowd intended to mob him; that he had not called on the sheriff for help because he had called

on a former sheriff who had refused to do anything, and he thought it would be useless to appeal to the present sheriff.

After Mrs. Lott's testimony was excluded, and after Lott had testified, there was no further offer of Mrs. Lott's testimony. In other words, after Lott's evidence, Mrs. Lott was not reoffered as a witness in the case.

While it is true that a party is not confined to any particular order in which his proof shall be offered, if the evidence is incompetent when offered, the party must show how it will be made competent. Dyson v. State, 26 Miss. 362; First Mar. at Cases, 710; Torrey v. Fisk, 10 Smedes & M. 590; Fondren v. Burfee, 39 Miss. 324. The testimony should have been reoffered. However, had Mrs. Lott's evidence been admitted, taking all the facts in the case into consideration, it is highly improbable that it would have influenced the verdict of the jury. The facts admitted by the appellant show that he had prepared this pit for the purpose of shooting at his enemies, who, he said, he feared would mob him.

The overwhelming weight of the evidence shows there was no great personal feeling against the appellant in the community, but that he was very unsocial and did not mingle much with his neighbors. None of them knew of any difficulty, or any ill feeling, between the deceased and the appellant. Bilbro, who was in company with Slay, and who was, himself, shot and wounded, did not see the appellant, never saw him until the trial. He told the court, at the conclusion of his testimony, that he would like, if it was permissible, to see the man who shot him, as he had never seen him in his life. According to Bilbro, there was nothing said or done on the part of Slay to cause any shooting.

The court will not reverse a case unless it appears, after a full and complete trial, that there was error which would probably have influenced the jury.

Looking at the trial as a complete one, and taking all

the evidence into consideration, we think the testimony of Mrs. Lott was improbable, and would not, probably, have influenced the jury had she been permitted to testify. We do not think the case should be reversed for the exclusion of her testimony, which was manifestly for the purpose of injecting the so-called unwritten law into the case.

The judgment is affirmed.

Affirmed.