MORRIS *v.* STATE.

(Division A. Oct. 17, 1938.)

[183 So. 694. No. 33205.]

**Welch & Cooper,** of Laurel, and **J. A. McFarland,** of Bay Springs, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

McGowen, J., delivered the opinion of the court.

On an indictment for murder in the killing of Paul Cooper, Virgil Morris was convicted of manslaughter and sentenced to serve a term of fifteen years in the state penitentiary.

The essential facts of the case are these: Appellant and deceased were sitting together in front of a cafe in the Town of Heidelberg when the deceased twitted Morris about having been searched at a show. This resulted in their engaging in a scuffle, and the deceased, being a man about fifty years of age, weighing in the neighborhood of one hundred and eighty pounds, the appellant about nineteen years of age, weighing about one hundred and thirty to one hundred and thirty-five pounds. In the scuffle, Cooper backed Morris into a stairway, where Morris stumbled and fell, and according to the State's evidence, Cooper retired to the edge

of the sidewalk and was arranging his clothing, when Morris, with a butcher knife upraised in his hand, went upon Cooper, they again scuffled and fell into the gutter; the position of the parties in the gutter being uncertain, and in a moment the appellant arose from the gutter, wiping the knife on the curb, and walked away to a shed, about twenty feet from the scene; and one witness for the State testified that he saw him throw the knife away, and later a butcher knife was found about eighteen feet from the difficulty. Cooper was found to have been cut in the upper third of his thigh and thence into the abdominal cavity. The slash or wound was about fifteen inches from end to end, the wound in the abdominal cavity severing an artery; from the effect of which, he subsequently died in a hospital.

The dying declaration of the deceased was to the effect that they engaged in a scuffle and that he, Cooper, only held and pushed the appellant, preventing him doing any harm, and that the appellant "knifed him" while they were in the gutter.

The appellant's version was that when he fell in the stairway, he was mad and he opened his pocketknife and at once prepared the knife to protect himself, that Cooper did not go to the edge of the walk but stood in the doorway and they again grappled and fell in the gutter, with Cooper upon him, and that he did not consciously cut the deceased. He denied that he had a butcher knife in the difficulty. He went to the shed near the point where the butcher knife was found. Other eye-witnesses for the defendant saw no knife during the entire difficulty. Appellant did not know how Cooper came to be stabbed. He went to the shed and there remained until he saw a friend; while the State offered evidence that while standing at the shed, the marshal of the town was proceeding toward him immediately after the stabbing when the appellant said to the marshal: "Lester Cooper, don't any of you come down here. If you do I will cut every dam one of you." This evidence was

permitted by the court over the objection of the appellant, but the language attributed to him by the marshal was denied by the appellant.

After appellant saw his friend, he left the Town of Heidelberg, where the homicide occurred, and spent the night at a negro church not far from his home. The next day, he went to Meridian, spent some hours there, and in the afternoon returned to Vossburg and to his home, and subsequently on that date, his mother surrendered him to the sheriff. He had some wounds and bruises on his head, and also scratches.

There was a contradiction offered by the State, to which we will refer specifically in the opinion; likewise, as to some instructions.

(1) It is contended that the court below erred in refusing to grant appellant a peremptory instruction. This case was appealed to this court once before, and report thereof is to be found in 174 So. 562. It was there held that it was a question for the jury on the issues of murder or manslaughter, but that the weight of the evidence made out a case of murder. On the facts here, we think the court did not err in refusing to grant a peremptory instruction.

(2) The State procured the following instruction: "The Court instructs the jury for the state that if you believe from all of the evidence in this case, beyond a reasonable doubt, *that the defendant cut or stabbed the deceased, Paul Cooper, with a knife as shown by the testimony in the case,* and that said stabbing or cutting was done without malice, and not in necessary selfdefense, and without authority of law, and in the heat of passion, then you may find the defendant guilty of manslaughter. And in the event you do so find, the form of your verdict may be: 'We, the jury find the defendant guilty of manslaughter.' "

It is complained that the words in the instruction "that the defendant cut or stabbed the deceased, Paul Cooper, with a knife as shown by the testimony in the

case," constitutes error, for the reason that the court, by the use of the words, "as shown by the testimony in the case," decided that question of fact, and appellant asserts that there is no evidence in the record that Morris cut or stabbed the deceased, and he says further that this instruction is in direct conflict with an instruction granted the appellant, to the effect that appellant could be acquitted if the jury found that the appellant killed Cooper as a result of an accident or misfortune while in the heat of passion upon a sudden and sufficient provocation. The appellant's instruction was based on Paragraph (b) of Section 989 of the Code of 1930. Whether the appellant was entitled to the instruction under said section or not, we do not think the granting of the instruction was reversible error, for the reason that the only positive evidence in the case is to be found in the dying declaration, wherein the declarant said that appellant "knifed him." The defendant himself swears that while mad, he opened the knife for self-protection, and entered into the second phase of the difficulty with it open. Therefore, we think the appellant, on his own testimony, had the knife open and went into the difficulty armed with it, as he says, to protect himself. The circumstances detailed by the witnesses, in addition to the dying declaration, excludes any idea that the deceased received the fatal stab from any other source than a knife in the hands of the appellant. The court should not have used the expression "as shown by the testimony in the case," but we would not for that reason reverse the case in the state of the record we have set forth.

(3) It is strongly insisted that the evidence of Cooper, the town marshal, detailed in the facts, should not have been admitted, wherein the appellant, immediately after the cutting said to an officer of the law: "Lester Cooper, don't any of you come down here. If you do I will cut every dam one of you." We think this evidence was entirely competent as tending to show the

state of mind, in some degree, of the appellant immediately after the homicide. Then too, the evidence was that he fled and went to another county, and the declaration made to an officer of the law was in aid of his design at that time to flee from arrest, and tended to carry out such design to prevent his being arrested, and to aid him in carrying out his purpose in making good his escape. See Brown v. State, 171 Miss. 157, 157 So. 363.

The court below permitted the State to contradict appellant's evidence to the effect that he was searched a second time at the show. He had sworn in his original evidence to that second search as a part of his defense. The fact of that search was a matter wholly immaterial and disconnected from the homicide, and had no bearing whatever thereon, being wholly immaterial and irrelevant. Viewing this trial as a completed trial, the error in admitting this contradiction was not prejudicial, and it is so improbable that it could have affected the jury in its verdict as to render a discussion unnecessary. Lott v. State, 168 Miss. 710, 152 So. 488.

On the whole case, we think the defendant had a fair and impartial trial, and we can find no sound reason for reversing this case.

Affirmed.