## JOHN EVANS *v.* THE STATE.

1. HOMICIDE—SELF-DEFENSE—THREATS.—Threats however, deliberately made, do not justify an assault and battery, much less the taking the life of the party making them.

2. SAME—"APPARENT DANGER" DEFINED.—When we use the term "apparent danger," we mean such overt actual demonstration, by conduct and acts, of a design to take life, or do some great personal injury, as would make the killing apparently necessary to self-preservation.

3. EVIDENCE—RESPECTING REJECTIONS OF COMPETENT EVIDENCE—RULE IN APPELLATE COURT.—If excluded testimony, had it remained for the consideration of the jury, would have had no influence on the verdict, the supreme court will not remand a case, on account of its rejection.

4. INSTRUCTIONS—OFFICE OF JUDGE.—It is the duty of the judge to inform the jury of the law of the case, when invited so to do by either party. He is not confined to

granting or refusing instructions in the language in which they are propounded. Nor is he obliged to grant an instruction embodying a correct principle, if that principle can have no application to the facts in the case.

5. INSTRUCTIONS TO BE CONSTRUED TOGETHER.—All the charges are to be construed together, as of *pari materia*, one as modifying another, so as to see whether, as an entriety, they correctly lay down the law, and if so, although a single instruction may be too broad in its terms, a reversal ought not to take place.

6. INSTRUCTIONS—IMMATERIAL ERROR.—"If the error be immaterial and irrelevant, and justice has been done, the court will not set aside the verdict, nor enter into a discussion of the questions of law." Wharton's Am. Cr. L., § 3080.

7. HOMICIDE—SELF-DEFENSE—APPARENT DANGER.—"A party may have a lively apprehension that his life is in danger, and believe that the ground of his apprehension is just and reasonable; but if he act upon them, and take the life of a human being, he does so at his peril. He is not the final judge whatever his apprehension or belief may have been of the reasonableness of the grounds on which he acted." 37 Miss., 349.

8. SAME—SAME—SAME.—In every case, where the homicide is sought to be justified on this ground, it must appear from the testimony in the cause, that the danger was not urgent, present and imminent, and that no reasonable mode of warding it off, or escaping from it existed, except to take life.

Error to the circuit court of DeSoto county. FISHER, J.

The testimony sufficiently appears in the opinion of the court.

The following charges were given for the state:

1st. To make a homicide justifiable, on the ground of self-defense, the danger must be either actual, present and urgent, or the slayer must have reasonable grounds to apprehend a design on the part of the deceased to commit a felony, or to do him some great bodily harm, and that there was imminent danger of such design being accomplished, and hence the mere fear of apprehension or belief, however sincerely substantiated by one person that another designs to take his life, will not justify the former in taking the life of the latter.

2d. Every killing with a deadly weapon is presumed to be malicious, and amounts to murder, until the contrary appears from circumstances of alleviation, excuse or justification; and it is incumbent on the accused to make out such circumstance of excuse, alleviation or justification, to the satisfaction of the jury, unless they should arise out of the evidence in the case produced against, or arise out of the whole evidence in the case.

3d. If the jury believe from the evidence that the defendant armed himself with a deadly weapon, for the purpose of seeking a difficulty with the deceased, and intending only to use the same provided it became necessary during the difficulty, in order to save his own life, and that being so armed, with such intention, he sought and brought on a difficulty with the deceased, and killed him with said weapon, then said killing is murder, though at the moment it took place defendant was in actual apparent danger of losing his own life.

4th. Was a charge respecting the duello: If the jury believe that the defendant challenged the deceased to fight him with deadly weapons, and that deceased accepted the challenge, and that defendant killed deceased while he was getting ready to fight in pursuance of said challenge, or that he killed him before deceased could arm himself so as to be on equal terms with defendant, or that he killed deceased in a fight thus accepted, in either case this is murder, and they will find defendant guilty accordingly.

5th. Was a general charge respecting the reasonable doubt: If the jury have a reasonable doubt of the guilt of the prisoner, they will give him the benefit of that doubt, but such reasonable doubt must amount in the mind of the jury to something more than mere possibility or conjecture that the prisoner may be innocent of the charge, but a reasonable doubt of his guilt arising out of the whole evidence in the case.

6th. Was a charge respecting confessions: In confessions by a prisoner, all must be taken together, as well that which is in his favor as that which is against him, but the jurors are the sole judges of the truth of confessions, and can receive a part and reject a part.

The prisoner asked the following charges, to-wit:

1st. If the jury believe from the evidence, that the prisoner shot and killed Wright, at a time when he had reasonable grounds to apprehend a design on the part of Wright to take his life, or to do him some great personal injury, and

that there was immediate danger of such design being accom. plished, the homicide was justifiable, and they will so find.

2d.   Although the jury may believe the prisoner was mistaken in believing there was reasonable ground. to apprehend a design on the part of the deceased to take his life or to do him some great personal injury, and that there was imminent danger of such design being accomplished; yet, if the jury are satisfied from the evidence that the prisoner believed himself to be in such danger, at the time he shot and killed the deceased, the killing was justifiable, and they will so find.

3d.   The necessity to take life that will be justifiable need not be actual; it is sufficient if the circumstances surrounding the parties at the time be such as to impress the mind of the slayer with a reasonable belief that the necessity is impending. If, therefore, the jury believe from the evidence in this case, that the circumstances surrounding the prisoner at the time of the killing were such as to create a reasonable impression and belief on his mind that the deceased · was about to take his life, or that he would, if let alone, immediately attempt to take his life, he was justifiable in shooting the deceased, and they will so find.

Which three instructions the court refused to give, and in lieu thereof gave the following:

If the jury are satisfied from the whole evidence that the accused deliberately shot and killed the deceased, at a time when the accused was in no actual danger of great bodily harm or of his life, then the accused is guilty of murder. But, if the jury are satisfied from the evidence, that the deceased intended to kill the accused, and that it was the pur-. pose of the deceased to enter his house, arm himself with his gun, and to return to the yard, and to make the attack upon the deceased with the purpose aforesaid, then the accused might act in advance and make the attack upon the deceased. It devolves upon the accused, however, to show to the jury by clear and satisfactory proof, that there was an actual necessity for killing the deceased before he entered his house.

4th. A party may anticipate the attack of his antagonist and justifiably slay him, if under all the circumstances of the case such course be necessary to protect himself; while it is necessary that this design should apparently be imminent, yet it is not essential that it should be immediate and impending, at the very moment of the killing.

To which the court added the following modification :

But where a party strikes where there is no impending danger, he is bound to show that the deceased intended if let alone to arm himself and make deadly assault upon him.

5th. Unless the jury believe from the evidence that the prisoner killed Henry Wright from a premeditated design, formed beforehand, to effect his death, they cannot find him guilty of murder.

To which the court added this modification :

But such deliberate design may be formed in a moment of time, and may be presumed, from the weapon used, and the time at which it was used.

6th. If the jury believe from the evidence that Evans killed Wright on a sudden quarrel, without a premeditated and formed design so to do, they must not find him guilty of murder.

To which the court added as a modification :

But such design may be formed in a short time, and if the killing was with a deadly weapon it is evidence of a formal design.

To the action of the court, in granting the instructions asked by the state, and refusing those of defendant, prisoner then and there excepted.

A motion was made for a new trial, on the ground that the verdict was contrary to the law and the evidence, which was overruled, and the prisoner excepted and sued out a writ of error to this court, and assigns the following errors :

1st. The court below erred in excluding from the jury the testimony of the witness, P. Buck.

2d. The court erred in giving the instructions asked by the state.

3d. The court erred in refusing to give the 1st, 2d, and 3d charges asked by the prisoner, and in giving the instructions framed by the court as a substitute for them.

4th. The court erred in refusing to give the prisoner's 4th charge, as asked by him; and in modifying the same.

5th. The court erred in refusing to give the prisoner's 5th and 6th charges, as asked by him and in modifying the same.

6th. The jury found contrary to the law and evidence.

*J. A. Brown*, appointed by the court to represent the plaintiff in error, made an oral argument and filed the following brief:

1st. On the exclusion of the testimony of P. Buck, the evidence is relevant to the issue. 1 Greenleaf on Ev., §§ 53, 60, 613–17, 593. Also, 1 Greenleaf on Ev., § 54, 62; § 504 8; ib. § 352.

The proof in this case, on either side, was exceedingly infirm, the important evidence for the state being drawn from the family of the deceased, and containing contradictions and discrepancies; the important evidence for the accused being drawn from the family of the accused, and containing contradictions and discrepancies, and the evidence on the one side, conflicting with that on the other. Under these circumstances, perhaps, the two proofs were on a balance in the jury's mind, and the exclusion of the testimony of P. Buck, a disinterested witness, which tended, in however slight a degree, to bolster up the prisoners case, may have turned the scale against him.

Can the appellate court now say that each of the twelve men who brought in this verdict, was so satisfied in his own mind in every material point, that slight additional evidence would not have raised a reasonable doubt? Such a doubt in a single mind should have destroyed the verdict.

2d. In the instructions, the court below announce erroneous principles on three points.

1st. On the point of reasonable ground to apprehend a design to commit a felony. When we cluster the 1st,

2d, and 3d charges asked by the prisoner, and the rejection of them by the court, with the substitute given by the court in their stead, and the 4th charge for the prisoner refused as asked, and modified by the court, we see that the court announced to the jury these principles, as the law in a case where a person indicted for murder interposed the plea of necessary killing in self-defense.

(1.) The accused is bound to show to the jury, by clear and satisfactory proof, that there was an actual necessity for the killing; the jury must be satisfied that the deceased intended, and it was his purpose to kill the accused or do him great bodily harm; and if the jury believe the accused deliberately shot and killed the deceased at the time when there was no actual danger of life, or of great bodily harm, he is guilty of murder.

2d. It is not sufficient to show that the accused killed, at a time when he had reasonable ground to apprehend a design on the part of deceased to kill him or do him great bodily harm, and that there was immediate danger of such design being accomplished; for it is untrue " that the necessity to take life, to be justifiable, need not be actual."

(2.) These principles are not law. The law is not what is declared to be in the first proposition, and it is what it is declared not to be in the second. See Rev. Code, 1857, p. 601, art. 168 (Hutch. Code, 957, § 3, essentially in the same words); 30 Miss., 628; 31 ib., 37 ib., 343 and 401; 302, 311; 26 Miss., 387; 1 Bishop on Crim. Law, § 384 and note.

3d. These erroneous enunciations excluded from the jury facts in evidence which, had they been allowed to consider them, might have led to a different verdict, when once satisfied that the deceased had no design to kill the accused, or that there was, from any cause, no actual danger to the accused, the jury were precluded from considering any further facts tending to show that on reasonable grounds the accused apprehended such designs. There was a strong case to show that the deceased had no such design, and that no actual danger existed, while the defense of the accused went in its

greatest force to establish that from the circumstances surrounding him at the time, he had reasonable ground to apprehend such a design, and that there was imminent danger of its accomplishment.

2d. On the point of reasonable doubt whether the homicide is justifiable.

Homicide is justifiable. 1st. When we cluster the 4th charge for the prisoner with the modification and the latter part of the substitute for the 1st, 2d, and 3d charges for the prisoner, we see that the court announced to the jury this principle : Where a person, indicted for murder, interpose the plea of justifiable homicide, in self-defense, it devolves on the accused to show to the jury, by clear and satisfactory proof, actual necessity for the killing; the jury must be satisfied that the deceased intended to do great bodily harm. This the accused is bound to show.

2d. The law is : 1st. Where the circumstances of the killing are in evidence, whether introduced by state or prisoner, and the accused takes his defense from these circumstances, the burden of proof rests upon the government and never shifts, and the jury must be satisfied to the exclusion of a reasonable doubt arising from the evidence, that the accused killed the deceased, not in justifiable self-defense; and, if they have such a reasonable doubt as to whether the homicide was justifiable, they must acquit.

3d. Where the unexplained fact of killing is alone in evidence, the law presumes malice; and if in such, or any case, the accused bases his defense on some distinct substantive grounds, not part of the circumstances of the killing—as insanity—he must prove his defense by an equilibrium, if not a preponderance of evidence. See 8 S. & M., 407 ; 3 Gray, 465 ; 28 Miss., 698; 1 Gray, 62-3-4-5; 8 Ga., 405; ib., 298-9, and 302-3 ; 1 Greenl. on Evidence (Redfield's edition), § 81, notes, etc.

3d. Acting under the erroneous enunciation of the court, as law, unless they were satisfied, by clear and satisfactory proof that the accused killed under the pressure of an actual

necessity, the jury were precluded from considering the evidence tending to prove the necessity, although it may have been sufficient to raise a reasonable doubt, or to put the proof on the point, *in equilibris*, or even if it were in slight preponderance in favor of the necessity.

On the point of implied malice: 1st. When we cluster the 5th and 6th charges for the deceased, noting the fact that they were refused as asked, and the modifications added, and the 3d charge for the state, we see the court instructed the jury, that the prisoner armed himself with a deadly weapon, for the purpose of seeking a difficulty with deceased, intending only to use it if it became necessary to save his own life, and being so armed, with such intention sought and brought on a difficulty with deceased, and killed him with the weapon, it is murder, *i. e.*, a conclusive presumption of malice.

2d. The law, as announced by this court, seems to intimate that the presumption, in such case, would be only *prima facie.* See 1 Ga., 678 and 681, by Fisher, J.; 11 Ga., 512-13, by Fisher, J.; 9 Ga., 301; 10 Ga., 593 and 612. The conclusive presumption is raised when the weapon is concealed, unfairness used, and undue advantage taken. 7 Ga., 541.

*J. S. Morris*, attorney-general.

The evidence of defendant's witness, Buck, in the court below, in respect to mutual ill-feeling and threats between the accused and the deceased, several weeks—probably months—before the killing, was properly excluded from the jury; not only because of the long time that had elapsed after these exhibitions and before the killing, and, because of the fact that, according to defendant's own showing, those differences had been reconciled and friendly relations restored, but for another and still better reason. The state might safely admit that the time of those differences, instead of being months, had been only an hour, before the killing; that the threats had been positive, instead of being conditional, as they were; that the ill-feeling and threats instead of being mutual, as they were, had been all on the side of

the deceased; and that instead of being "made up," as the witness testified, the ill-feeling and threats had continued in the breast of the deceased, and the threats upon his lips until the very moment of his death ; and still, all this would avail the accused nothing.   Because the proof is, that, having armed himself with a shot gun loaded with buckshot, he sent for the deceased in the field where he was at work ; induced him, all unarmed and in his shirt-sleeves, as he was, to leave his work and go to the accused at the house, and then, taking advantage of his helpless and unarmed condition, shot him dead.

The accused being at the house and thus armed, sent word to the deceased by the witness, Jim, to come, and he came and was shot.   The counsel for accused, in his defense, contends that the deceased knew that it was a fight—a mortal combat—to which he was invited, and, that accepting the challenge, he came "with an elastic tread," and was killed in the act of going into his house to get a gun.   This is certainly an ingenious conjecture, contradicted and unsustained, as it certainly is, by the proof and circumstances of the case. But let it be admitted for the argument's sake.   And what then ?   The killing, even under these circumstances, is murder at common law.   See Wharton C. L., § 958; Smith v. State, 1 Yerg. Tenn. R., 228; and also by the statutes of this state.   Rev. Code, p. 600, articles 165, 166.

But when it is observed that Buck's evidence tended only to show the existence of bad feeling on the part of the deceased, manifested by threats, made when deceased was "*very much excited and intoxicated ;*" that those threats were made upon *conditions*, and that probably " six weeks afterward," like ill-feeling and like threats were indulged by the accused, who said that he and the deceased had " made it up;" and that the killing occurred probably several weeks afterward, upon the challenge of the accused to deceased to come and have a shooting match; it is perfectly apparent that Buck's testimony, however true it may have been in point of fact, was inapplicable and irrelevant to the issue

before the jury, and was, therefore, properly excluded from their consideration.

In respect to the rulings of the court in giving, refusing and modifying the instructions asked by the state and by the defense, all of which are embodied in the record, I deem it unnecessary on the part of the state to enter upon any discussion. Those given on both sides, taken as a whole, contain a clear and correct statement of the law applicable to the evidence. Those refused on the side of the accused, were properly refused, because incorrect as legal propositions, or, if not, they were certainly inapplicable to the facts before the jury, or mere repetitions of the same legal principles which the court had already given in other charges contained in the record.   See Riggs v. State, 30 Miss., 635; Mask v. State, 36 ib., 77; Browning v. State, 33 ib., 48; Beason et al v. State, 34 ib., 602.

*C. E. Hooker*, for plaintiff in error,

In replying, made an elaborate oral argument, holding that the rule of Dyson v. the State as modified by Wesley v. the State, 37 Miss., 349, was the law of the present case; and the substitute given for the 1st, 2d, and 3d charges of the prisoner was altogether more stringent than said rule. He also insisted that Buck's testimony was material, and should have been admitted.

SIMRALL, J.:

1st. Did the court err in excluding from the jury the testimony of the witness, Buck, which was to the effect, that deceased came to his store sometime before the killing, either drunk or much excited, and said he had had a difficulty with John Evans, the accused, and had run him off.   Witness replied, John Evans is a dangerous negro to run against.   Deceased said if John Evans fooled with him he would kill him, and applied to buy buckshot.   From three to six weeks before the homicide, these threats were communicated to John.   In the interview, Henry said the " fuss" had been made up.   If this testimony could elucidate, or tend so to do, any point in

the case pertinent to the issue, it ought not to have been excluded. Deceased did not declare a purpose to make so much as an assault upon the prisoner: "If John fooled with him, he would kill him," putting the killing on the condition of the renewal or intimation of further trouble by John. But this may have been mere gasconade. Be that as it may, there is no principle of criminal. law better settled—none more necessary to the peace of society, and the safety of human life—than that threats, however deliberately made, do not justify an assault and battery, much less the taking the life of the party making them. That is excused when done in the necessary defense of one's own life, or to escape great bodily harm.

To shoot down another on sight, and who, at the time, is making no hostile demonstration dangerous to life and limb, and especially if not prepared and armed so to do, is, in law, murder. It is murder, because the law tolerates no justification, and accepts no excuse for the destruction of human life, on the plea of self-defense, except that the death of the adversary was necessary, or apparently so, to save his own life, or his person from great bodily injury, and there shall be imminent danger of such design being accomplished. The danger to life, or of great personal injury, must be imminent, present at the time of the killing, real or apparent, and so urgent that there is no reasonable mode of escape except to take life. When we use the term "apparent"—apparent "danger"—we mean such overt, actual demonstration, by conduct and acts of a design to take life, or do some great personal injury, as would make the killing apparently necessary to self-preservation. As if A, who had threatened the life of B, presented at him a gun, in a shooting posture, and within range, A might well anticipate the fire, and if he should kill B, he would be justified, although it turned out afterwards that the gun was not loaded, and it was only intended to frighten him. Here was an act done which was "apparently" dangerous to life, in execution of the threat. This serves to illustrate what is meant by "apparent" dan-

ger.  The principle upon this subject, is carefully stated by the chief justice in Wesley v. State, 37 Miss., 349.  Now, if the excluded testimony had remained for the consideration of the jury, it would have had no influence on the verdict, unless there was testimony that the deceased, at the time of the killing, sought a deadly conflict with the accused, or was making some demonstration towards the accomplishment of his threat.  There were, however, no developments made which would make this testimony pertinent, or entitled to a feather's weight.  The evidence is conclusive, that the accused sent a message to the field for the deceased to come to the quarter, and when he got there he shot him down with his gun, when he was unarmed, without weapon in his hand or on his person, and when at the time there was no danger, real or apparent, to his life or person.

2d.  Was there error in the instruction granted on the prayer of the district-attorney, and in the modifications of those requested by the accused.  Whilst the facts belong to the jury, and it is their province to weigh the credibility and weight of testimony, and draw their own conclusions as to the truths established by it, the court is esteemed to know the law, and it is the duty of the court to inform the jury of the law of the cause, when invited so to do, by the parties or either of them.  Nor is the judge confined to granting, or refusing instructions in the language in which they are propounded to him.  Upon him rests the responsibility of a correct statement of the law.  He should not permit the jury to be confounded, or confused by the language in which they are concluded.  But as presented to him by counsel, if they do not, on all the points embraced in them, fairly and concisely declare the law, he should so modify them as to communicate to the jury his conceptions of it ; nor is he obliged by statute, to grant an instruction embracing a correct principle, if that principle can have no application to the fact in evidence.  Boles v. State ; Green v. State, 28 Miss., 688.

It has been several times declared from this bench, that

all the charges are to be construed together, as of *pari materia ;* one as modifying another, so as to see, whether as an entirity, they correctly lay down the law, and if so, although a single instruction may be too broad in its terms, a reversal ought not to take place. Childress v. Ford, 10 S. & M., 25 ; Mask v. State, 36 Miss., 91.

The rule as deduced by Wharton from American cases, "if the error be immaterial and irrelevant, and justice has been done, the court will not set aside the verdict, nor enter into a discussion of the questions of law." Am. Crim. Law., § 3080. It finds full support in the adjudications of this court. McLanahan v. Barrow, 27 Miss., 664 ; State v. Cotton, 31 Miss., 504 ; Wilkinson v. Griswold, 12 S. & M., 669 ; Mask v. State (*supra*).

The three first prayers asked by the accused, are directed to the question of a homicide, in the presence of imminent danger to the life, or of great personal injury to the accused. The second of these refers the urgency of the danger, to the danger, to the judgment of the defendant, and altogether, he may have been mistaken in his relief ; yet if he acted, under such belief of danger, he was justifiable. The third asserts that the necessity to take life, need not be actual, if the circumstances surrounding the parties, were such as to impress the mind with a reasonable belief that the necessity exists. The circuit judge, as we have said, may put the charges as prayed, into such words, as in his opinion, will more clearly and correctly inform the jury of the law arising on the evidence, although the instructions as asked, contain sound rules of law. The first of these instructions as written by counsel presents the law of justifiable killing in the presence of danger to the life or of great bodily injury.

The other two are susceptible of the interpretation, that the opinion or belief of the prisoner, as to the existence of the danger and its urgency, if fairly entertained, is a justification. The substitution made by the court, whilst correctly stating the ingredients of murder, lays down the rule as to homicide in the emergency of danger to the life or person of

the slayer in very favorable terms to the prisoner; more favorable really than the testimony or law would warrant. The testimony in one aspect of it, and as contemplated in this instruction, tended to show that the deceased had accepted the invitation to the shooting match, and was probably going to his house to provide himself with a gun. If this were so, then the court tells the jury that the prisoner may have killed the deceased in anticipation of his return from the house with a gun. If there was a purpose in the accused to kill, and it was necessary to defeat that purpose by killing him before he entered his house, surely the pris- oner could not complain of this charge, for it placed him on very broad grounds of self-defense. We do not think if one man invites another to mortal combat, that he who gives the invitation, being already armed, can justifiably shoot the other before he has armed himself, and whilst going to a place where his weapon may be, although the deceased had formed the purpose to use his weapon on his return. If that were so, it would only be necessary for one man to arm himself and advise his enemy to prepare to meet him, and then slay him whilst on his way to procure arms. His plea would be that the deceased had formed the design to kill, and was in the act of making preparation to put it in execution. The law gives countenance to no such idea. There is far less pretext for excuse or justifica- tion in such circumstances; then when two, on mutual agree- ment, go out and fight with deadly weapons, in this case, it is murder if either slay the other, for the plain reason that there is a premeditated design in either to kill the other; *a fortiori*, would it be murder in him who sent the challenge, if he should, with a fire-arm, slay his adversary before the combat begun, and before deceased was armed to enter upon it? Doubtless the matter in the second and third prayers for instruction by the accused, which induced the court to with- hold them, was because it predicated in terms too positive and strong that the accused might act upon his own belief and opinion as to the emergency of impending danger. The law

on this subject is stated with singular precision and felicity, in Wesley v. State, 37 Miss., 349, in these words: "A party may have a lively apprehension that his life is in danger, and believe that the ground of his apprehension is just and reasonable; but if he act upon them, and take the life of a human being, he does so at his peril. He is not the final judge, whatever his apprehension or belief may have been of the reasonableness of the grounds upon which he acted." In every case where the homicide is attempted to be justified on this ground, it must appear from the testimony in the cause, that the danger was urgent, present and imminent, and that no reasonable mode of warding it off or escaping from it existed, except to take life. The mere apprehension or belief that the deceased is about to arm himself, and return to enter into a combat, does not show a present and imminent danger. If he goes and arms himself to engage in a combat with deadly weapons, on an invitation accepted, or upon mutual agreement, and engages in it, it will be murder in him who provoked the fight or in him who accepted, if either be slain. If individuals will conform to the law, and avail of preventive justice in proper cases, as where an assault is threatened or deadly menaces are uttered, claim the protection of the law, and put the wrong-doer under pledges and bonds to be of good behavior and keep the peace; or if the ministerial officers, charged especially with a preservation of order, as is their duty in all such cases occurring within their view, take the offender before the proper functionary, that he may be put under legal constraint to deport himself peaceably, there would not be so many occasions of pressing on juries and courts this character of defense. Individuals are prompt enough to appeal to preventive justice to restrain threatened injuries to their property. The machinery of the law has made corresponding provisions to guard against menaced wrongs and injuries to the person. If, instead of resorting to these, persons against whom threats or menaces are made, take the life of their enemy on the apprehension that they may be executed, and

when no effort to accomplish them is being made, they cannot be permitted to rely upon the apprehension of danger arising from the threats as meeting the requirement of the statute, as laid down in one of the subdivisions of article 168, Code, p. 601. We are of the opinion, that taking all the instructions together, no error has been committed to the prejudice of the defendant; but, on the contrary, he had the benefit in the instruction substituted by the court, of a broader exposition of self-defense in case of a homicide committed on the apprehension of a danger to his own life or person, than is warranted by the law. The true rule is correctly stated in the first and second charges given on behalf of the state.

The judgment is affirmed.

A petition for re-argument was filed; but a re-argument was refused.