## THOMAS J. SCOTT *v.* THE STATE.

1. INSTRUCTIONS. *Judicial discretion.*
   The circuit judge may carefully scrutinize the requests of charges, and, to insure
   an accurate and complete statement of the law, may give them in language of
   his own selection.

2. MURDER. *Self-defence.    Overt act.*
   To justify homicide on the plea of self-defence, under the Code of 1871, sect.
   2631, there must be something in the acts and conduct of the deceased
   indicating a present intention to kill, or do some great personal injury to the
   slayer, and imminent danger of such intention being accomplished.    Mere fears
   of such design, or apprehension that it will be put in execution, will not
   make out the defence.    The slayer may act on appearances, but such appear-
   ances must indicate the danger.

3. EVIDENCE. *Res gestæ.*
   Under an indictment for murder, where the evidence is conflicting, some of it
   tending to prove that the defendant killed the deceased without provocation,
   and other parts tending to prove that the deceased first attacked the accused
   with a pole, it is error to exclude testimony that, on the evening of the day of
   the combat, a bruise, which seemed to be freshly made, was seen on the side
   of the defendant's head, although the counsel for the prisoner admit that he
   could make no proof by other evidence that the bruise was received in the
   combat.

ERROR to Circuit Court of Tallahatchie County.

Hon. SAMUEL POWELL, Judge.

The case is stated in the opinion of the court.

*W. S. Eskridge* and *Bailey & Bailey,* for the plaintiff in
error.

1. The court erred in modifying the instructions.    *Evans*

*v. The State,* 44 Miss. 473; 37 Miss. 349; Hor. & Thomp. Cases on Self-defence, 96, 256, 516, 814.

2. The court erred in ruling out the testimony of Henry Harris. There is no well-grounded reason why evidence of the bruise on the head should not have gone to the jury as a circumstance in the case.

*T. C. Catchings,* Attorney-General, for the State.

1. The testimony respecting the bruise on the head was not in any way connected with the case, and the defendant's counsel announced that he could not connect it with the case. Under such circumstances, it was not part of the *res gestœ,* and was clearly irrelevant.

2. The judge had a clear right to modify the instructions, and it was his duty to do so. The instructions asked were wrong, and the modified instructions given were right.

SIMRALL, C. J., delivered the opinion of the court.

The plaintiff in error, who was indicted for murder, placed his defence on two grounds: *First,* That he was justified in striking the fatal blow, " in the lawful defence of his person, where there was reasonable ground to apprehend a design in the accused to take his life, or to do him some great personal injury, and there was imminent danger of such design being accomplished." Code, sect. 2631. *Second,* That the killing happened " by accident or misfortune, in the heat of passion, upon a sudden and sufficient provocation; or upon a sudden combat, without any undue advantage being taken, *and without* any dangerous weapon being used, and not done in a cruel or unusual manner." Sect. 2632.

Requests of instruction to the jury were propounded on both theories; some were given, others refused or modified. Complaint is made in this court of the charges given for the State, and the refusal or modification of those asked by the defendant. We think that the instructions given by the court, in place of those prepared by the defendant's counsel, announce the law of self-defence in conformity to the decisions

of this court.   It is no just ground of complaint that the *Nisi Prius* judge should carefully scrutinize the requests of charges to the jury, and, to insure an accurate and complete statement of the law, should give them in language of his own selection. He is charged with the duty of correctly stating the law applicable to the testimony on all the points suggested by the written requests of counsel.  If the language of counsel is obscure or equivocal, or if the law is not accurately and fully set forth, it would perhaps better subserve the ends of justice, in many cases, to amend the requests than to refuse them outright.

It has been uniformly ruled in this State that, to justify a homicide on the plea of self-defence, under the statute (Code, 2631), there must be something in the acts and conduct of the deceased indicating a present intention to kill, or do some great personal injury to the slayer, and imminent danger of such intention being accomplished.   The justification arises out of the perilous situation of the slayer, and a necessity to take life in order to extricate himself from imminent, present, and urgent danger to his own life, or great personal injury. The circumstances must be such as that a reasonable man so situated would have just grounds to believe that the peril is so urgent and impending as that there is no *reasonable* mode of extrication except to kill his adversary.   These *circumstances* must consist of acts, conduct, and behavior which, to a reasonable man, evince the " design " or " intent " to commit a felony upon, take the life of, or do some great bodily injury to the slayer.   Mere fear of such design, or apprehension that it will be put in execution, will not make out the defence, unless the present execution of the design is manifested by some act, conduct, or behavior of the deceased which would evince to a reasonable person that the peril was urgent and impending, and to slay was necessary to protect his own life, or his person from great injury.   The slayer may act on " appearances," but such " appearances " must indicate the danger, — as, if the deceased presents a " fire-arm," directed at the per-

56 MISS. — 19

son of the accused, in range likely to produce death or great injury. If the "reality" was that the gun or pistol was not loaded, and the purpose was merely to intimidate the accused, he would be justified in killing, because the acts and conduct of the deceased would evince to a reasonable mind the presence of an urgent and impending danger.

The instructions substituted by the court conformed to these principles. *Dyson's Case*, 26 Miss. 362; *Wesley's Case*, 37 Miss. 327; *Evans's Case*, 44 Miss. 762; *Head's Case*, 44 Miss. 231.

Those granted for the State were correct.

The defendant offered to prove by one Harris that, in the evening of the day of the combat, he saw on the *left* side of the head of the accused a bruise which seemed to have been freshly made. The testimony was excluded because the counsel for the accused admitted that he could not make proof by other evidence that the bruise was received in the combat.

Every event that occurs has its proper place and relation to a complication of circumstances, and has connection with the concurrent facts of which it forms a part.

When we investigate a particular act, alleged to have been criminal, the mind naturally craves knowledge of every thing that transpired at the time and place, what was said and done by the parties involved, so that we may be possessed of all the material that would in any wise aid in forming a judgment of the act, whether criminal or not, and if culpable, to what degree.

It may be said, therefore, that every circumstance and occurrence, however trivial in itself, which forms a part of the *res gestæ* may be consulted, and may contribute somewhat to form a correct judgment of the character of the act.

Whenever the fact offered in evidence is or may have been part of the transaction for which the accused is on trial, and comes within the rule of the *res gestæ*, the single question presented to the court is one of relevancy or pertinency, and not of force or value as testimony.

No matter how slight the inference may be that can be drawn from a particular fact, it is competent to be considered as an element of the entire concrete of facts from which the deduction is to be made.

The defence most relied on, and having the greatest weight in the evidence, was that the accused struck the fatal blow to protect himself from an impending blow about being inflicted upon him with a bludgeon, which, in the hand of the deceased, was " dangerous."

The defendant was entitled to prove any circumstance that might be calculated, however feebly, to sustain his hypothesis.

The circumstances of the homicide might have been such that the " bruise," although inflicted by the deceased, could not and ought not to have had any influence with the jury; and although excluded, the verdict, on well-settled principles, would not be set aside by this court. Whether, therefore, the exclusion of the testimony is a sufficient reason, or not, why the verdict should be set aside, depends on the case made against the defendant by the testimony.

The witness Ross (for the State) described the deceased, at the time he was stricken by the accused, as making no attempt to use the stick, which he casually had in his hand, on the person of the accused.

The witness Curry, for the defendant, represented the deceased as having the bludgeon impending in the air, and descending on the head of the accused, which was warded off with the left hand, at which moment the accused struck with the saw. This witness described the deceased as rather taking the initiative in the combat, and the accused as meeting force with force. The conflict between these witnesses is palpable and irreconcilable in three respects: first, as to which party first made the demonstration of force; second, as to what was the attitude and action of the deceased at the moment the accused struck with the hand-saw; third, as to the character of the bludgeon in the hands of the deceased. Ross says that

it was a "dog-wood prize-pole, or stick." Curry says that it was a "piece of pine scantling, about four feet long."

It would have been competent for the prosecution to prove any independent circumstance, by another witness, which would have corroborated the account of the combat given by its witness Ross. It would have been equally competent for the accused to have put in evidence any additional circumstance that would support the testimony of his witness Curry. The ends of justice and truth demanded that the jury should have been informed of every fact that would aid them to determine who was responsible as the aggressor in bringing on the conflict, and whether it was necessary for the accused to take the life of the deceased.

It was not true that the action and conduct of the deceased, pending the conflict, was as described by both these witnesses.

Is it probable that the bruise on the side of the head of the accused was made during the encounter? According to Ross, it was not only improbable, but impossible.

How would the same question be answered in the light of the testimony of Curry?

The state of the testimony when this offer of evidence was rejected was this: W. C. Ross, witness for the State, had testified that himself, the deceased, and William Curry were working on the gallery of the house occupied by Mrs. Ross, mother of witness and the deceased. Witness stated that deceased was not pleased with the manner in which the work was being done, and its progress. Deceased said to prisoner, "You are not doing the work right," etc. Prisoner said, "If you are going to boss the job, I will quit." Deceased replied, "Somebody ought to boss the job who had sense enough to do it." The parties were twelve or fourteen feet apart; the prisoner then walked up to deceased and struck him with the tooth-edge of the saw. At the time prisoner approached and struck the deceased, the latter either pushed the prize-pole towards the accused, or it fell towards him. The pole was seven feet

four inches long, two inches in diameter at one end, and about four at the other. At the time deceased was struck, he had the dog-wood pole standing straight up, one end resting on the ground, holding it in his hand.

Curry agrees with Ross as to the colloquy, and continues his narrative thus : " The prisoner passed by the witness, approaching nearer the deceased, and, having just sawed off a piece of plank, was stooping down to pick up another piece of plank, for the purpose of sawing off of it a block,    *    *    * when the deceased struck at the prisoner with a piece of scantling, that squared two inches or a little more, which the deceased had in his hand at the time ; but the prisoner, seeing the lick coming down upon him, arose and warded off the blow with his left hand, and at the same time struck the deceased over the head with the hand-saw he had in his hand at the time.    *    *    * Does not know whether *deceased struck prisoner on the head or not*, for the blow was knocked off by prisoner." On cross-examination, witness stated " that prisoner was in the act of stooping down to get a piece of timber to saw, when deceased struck at him, as though he intended to strike him *on the head*, when prisoner threw up his left arm and warded off the lick, and in doing so knocked the piece of scantling out of the hand of deceased, and then struck him with the hand-saw over the head. On reëxamination, the witness stated that prisoner struck with the hand-saw about the same time he warded off the blow deceased was attempting to give him."

There was no effort by the prosecution to impeach the credibility of Curry, nor is his account of the combat intrinsically incredible. The transaction might have occurred as he described it.

Does the bruise on the accused connect *itself* with the combat *sufficiently* to allow the proof of it to have been made? When its reality had been proved, the question would still remain for the jury to determine whether it is of any value as the predicate of any inference. It was a fresh bruise ; it might have been made by the scantling as it was descending

towards the head of the accused (if Curry is to be believed). Whether it came in contact with the head, or not, the witness would not say. It is not improbable that it might have occurred in that way. The accused may have hurt his head in his fall, when pursued by Ross.

If the testimony had been admitted, it would have been open to the State to pursue the investigation. The jury might, if this testimony had been admitted, have given more weight to the testimony of Curry. They might have regarded it as corroborative of his account of the *rencontre*. The defendant may have been prejudiced by its exclusion.

We think there was error in this ruling of the court.

We do not, in any thing we have said, mean to intimate any opinion of our own as to the credibility of the witnesses, or to give expression of any view of the evidence, tending in the least to embarrass a jury in its exclusive right to estimate its weight, or determine as to the credibility of conflicting witnesses.

Judgment reversed and a new trial awarded.