73   873
83   439

## Frank Godwin. *v.* The State.

1. CRIMINAL LAW.   *Assault with intent to kill.   Instructions.   Reasonable doubt.*

   When, on a trial for assault with intent to kill and murder, there is evidence that the person alleged to have been assaulted had made threats against the accused which were communicated to him, and that he struck the accused, and threw his hand behind him as if to draw a pistol, whereupon the accused drew a pistol and shot him, and the court has refused all the instructions asked by the accused, it is error to instruct the jury to find the accused guilty, if they "believe certain facts from the evidence," without anywhere charging them that such belief from the evidence should exclude every reasonable doubt.

2. SAME.   *Instructions.   Belief without regard to the evidence.*

   It is error to instruct a jury to convict the accused, if they "believe" certain facts, without the qualification that such belief must arise from the evidence.

3. INSTRUCTIONS.   *Self-defense.   Actual danger.*

   The actual danger of the accused is not an essential element of the right of self-defense, and it is error to so charge a jury on a trial for assault with intent to kill.

4. SAME.   *Shooting while adversary's back is turned.*

   That the accused shot at the person he is alleged to have assaulted with intent to kill while the latter's back was turned, is not conclusive of his guilt as matter of law, and it is error to so charge the jury.

5. SAME.   *Deadly weapon.   Presumption of malice.*

   It is error to charge the jury, on a trial for assault with intent to kill, that "the use of a deadly weapon is a presumption of malice,"

when all the circumstances attending the shooting are fully disclosed by the evidence.

6. SAME.   *Fragmentary statement of facts in instructions.*

It is error to direct a jury either to acquit or convict on part only of the facts necessary to any phase of the case.

FROM the circuit court of Copiah county.

HON. J. B. CHRISMAN, Judge.

Frank Godwin was convicted of assault and battery with intent to kill one Oscar Carter.   The material facts, as shown by the evidence, are as follows: Godwin and Carter had a quarrel on Friday night in Crystal Springs, in which mutual insults were given.   On Saturday evening following, Carter, who lived about two miles from town, came back and made some threats that he would do Godwin up.   These threats were communicated to Godwin, who armed himself with a pistol.   Late in the evening Godwin was in a barber shop talking to a friend, when Carter came in at the front door.   Godwin was leaving the barber shop, when he was stopped by Carter, who demanded an apology for the previous insult.   Godwin stated that he was sorry for what he had said, and offered to leave it to Mr. Pope, the man to whom Godwin had been talking, to settle the difference between them.   Pope told Carter that Godwin had just been telling him about their trouble and was anxious to make due apologies.   Mutual apologies were then made, and Carter offered to shake hands, which Godwin refused. This angered Carter, and he declared all apologies off and demanded an apology of Godwin.   The barber then requested that they have no difficulty in his shop, and they went out on the street in front of the barber shop.   Carter again demanded an apology.   Godwin declined to apologize unless Carter would first retract the insult given him.   After some interchange of words, Carter struck Godwin in the face, staggering him back. Some of the witnesses stated that Carter immediately threw his hand on his pistol pocket as if to draw his pistol.   Carter

stated that he had his left hand on his hip. Godwin drew his pistol and shot at Carter three times, one of the shots taking effect. Some of the witnesses stated that it was the first shot that struck Carter and he then started to run, and the other two shots were fired as Carter ran off, with his back to Godwin. Defendant's witnesses stated that all three shots were in rapid succession, as fast as they could be fired. Carter testified that, "I had my left side to him when he shot first, and this shot knocked me around with my back to him. I had taken but a few steps when the shooting was all over. It was all done in a minute."

The court refused all the instructions that were asked by the defendant, which were as follows:

"1. If Carter had cursed and abused defendant, and made threats of serious bodily harm against him, which were communicated to him, then the defendant had a right to be on his guard against him, and to arm himself for his protection; and if, from Carter's conduct, it reasonably appeared to defendant that Carter intended to shoot him, the defendant was not bound to wait until Carter had drawn his pistol, but might anticipate him, and kill him, if such killing was apparently necessary to protect his own life.

"2. You cannot find defendant guilty of the crime charged here unless you would find defendant guilty of murder if he had killed Carter, and was on trial for murder.

"3. If you believe from the evidence that defendant shot Carter when he appeared to be in no danger at Carter's hands, but that such shooting was in the heat of passion, and without deliberation, you must acquit of the crime charged.

"4. In order to justify shooting Carter, it is only necessary that the evidence shall show that, from Carter's conduct at the time of the shooting, the defendant reasonably appeared to be in danger of serious bodily harm at his hands; and, if your minds are in doubt, on the evidence, as to whether this was so, it is your duty to find a verdict for the defendant.

" 5. The evidence is insufficient to warrant a conviction if it simply raises a probability that defendant is guilty, however strong. It is only when the evidence is sufficient to satisfy your minds to a moral certainty that he is guilty that you will be warranted in finding a verdict of guilty.

" 6. You should not try the defendant by the light of after developed facts, nor should you hold him to the same calm, deliberate judgment which you are now able to form, but you should, as nearly as possible, put yourself in his place and judge of his acts, situated as he was, and confronted as he was, and remember that he had a perfect right to kill Carter if appearances reasonably indicated that his own life was in peril, whether Carter was armed or not.

" 7. If you believe, from the evidence, that it is reasonably doubtful as to whether or not Carter struck defendant a blow with his fist and then threw his hand behind him as if to draw a pistol, and that then defendant shot him because he reasonably believed his life in peril at Carter's hands, it is your duty to promptly acquit him.

" 9. If you believe, from the evidence, that Carter, a short time before the shooting, had threatened violence to the defendant, of which the defendant was informed, and that he struck defendant a blow with his fist and threw his hand behind him as if to draw a pistol, then defendant had a perfect right to interpret this act of Carter's in the light of such threats; and, if you believe, under these circumstances, that defendant reasonably believed his life in peril, then he was perfectly justifiable in shooting Carter, even though you may believe Carter was wholly unarmed, and the defendant was in no real danger at his hands.

" 10. It is wholly immaterial whether Carter was, in fact, armed with a pistol or not. If he pretended, by his conduct, that he was, and it reasonably appeared to defendant that he was, attempting to draw it and shoot him, then he had as much right to shoot Carter as if Carter had, in fact, had a pistol, for

the law will justify killing a man who tries to bluff and frighten his adversary by pretending that he has and is about to draw a pistol and shoot, as certainly as it does killing one who really has and is about to draw a pistol and shoot.

"11. The jury are the sole judges of the facts of the case, and alone have a right to say from the whole evidence whether the defendant is guilty or not, and if you believe from the evidence in the case that the shooting was done at a time when it appeared to a reasonable man that Godwin's life or limb was in danger, you must acquit him.

"12. The burden of proof is upon the state, in order to convict of the crime charged, to show that the shooting was not only done deliberately and feloniously and with malice aforethought, but that it was also done without legal excuse or justification, and, unless it has made such proof so clearly on the whole evidence as to remove from your minds every reasonable doubt, you must acquit of the crime charged.

"13. Shooting a man with a deadly weapon with intent to kill and murder, is justifiable under the law when done in necessary self-defense, and if you believe from the evidence that, at the moment of the shooting, it reasonably appeared from the movements and conduct of Carter that Godwin's life or limb was in serious danger at his hands, you must acquit him."

The court gave the following instructions for the state:

"1. The court instructs the jury for the state in this case that no mere assault with the hand or fist will justify one for the killing of a human being, and if the jury believe from the evidence that the witness, Carter, struck defendant with his fist, and threw his hand behind him, and thereupon the defendant drew a pistol from his overcoat pocket, and shot witness, Carter, with intent to kill him, then the defendant is guilty as charged, and it is your sworn duty to so find.

"2. The court instructs the jury for the state in this case that no mere assault or apparent assault with the fist will justify the killing of a human being, and, unless the jury believe

from the evidence in this case that the defendant shot witness, Carter, with intent to kill him when his own life or limb was in imminent danger, then the defendant is guilty as charged.

" 3. The court instructs the jury in this case for the state that if they believe from the evidence in this case that Godwin shot at Carter with a pistol more than once, and if they further believe from the testimony that he shot at Carter at any time with intent to kill him, when his own life or limb was in no immediate or apparent danger, then the defendant is guilty as charged, and it is your sworn duty to so find.

" 4. The court instructs the jury for the state in this case that the use of a deadly weapon is a presumption of malice, and if the jury believe from the evidence that the defendant made an assault upon the person of witness, Carter, with a pistol, which they believe to be a deadly weapon, and shot Carter, the law presumes an intent to kill him, and, unless Carter was making some demonstration that was immediately or apparently dangerous to the life or limb of defendant, then the defendant is guilty as charged, and it is your duty to so find.

" 5. The court instructs the jury that in this case they are the sole judges of the testimony of each and every witness who has testified in this case, and they have the right, as jurors in this case, to reject the testimony of any witness whose testimony they believe to be discreditable and not worthy of belief.

" 6. The court instructs the jury for the state in this case that if they believe from the evidence that the defendant armed himself with a pistol, which he provided for the purpose of making an attack upon Oscar Carter, and did afterwards meet Carter, and provoked a difficulty with him, in which he shot Carter, he is guilty as charged, even though you may believe from the evidence that Carter struck defendant with his fist, and threw his hands behind him.

" 7. The court instructs the jury for the state that if they believe Godwin deliberately shot at Carter while Carter had his

back to Godwin, then the jury should find the defendant guilty.''

Defendant's motion for a new trial was overruled, and he appealed.

*R. N. Miller*, for appellant.

The issues of fact disputed were (1) whether Godwin acted on reasonable apprehension of danger to his life or limb; (2) whether he acted with deliberation or malice, or whether he shot in heat of passion, excited by sufficient provocation. The court decided both these issues by its instructions. The state's first charge is erroneous. It takes from the jury the right to decide whether the demonstrations of Carter were reasonably and apparently dangerous to Godwin's life or limb. It is on the weight of the evidence. It assumes the facts hypothecated were all the facts in evidence. Godwin had a right to interpret these movements of Carter in the light of the threats. *Kendrick's case*, 55 Miss. In *Long's case*, 52 Miss., 37, the court say: '' We would not hesitate to reverse where the court had undertaken to instruct as to whether a hypothetical statement of facts constituted apparent danger, if such statement included any fact from which any reasonable man might have inferred its existence.'' The court should give general definitions in such cases, leaving the jury to apply them to the facts of the case. *Jackson's case*, 66 Miss., 90. Carter's conduct, it seems to me, would warrant any reasonable man in believing that there was appearance of danger. *Collins* v. *The State*, 71 Miss., 691; *Fortenberry's case*, 55 Miss., 403. The second charge is erroneous. *Dyson* v. *The State*, 26 Miss., 362; *Bang* v. *The State*, 60 Miss., 574. The third charge is erroneous in undertaking to draw a distinction between the pistol shots. Deliberation is not predicable of instantaneous action. *Kelly* v. *The State*, 3 Smed. & M., 518; *Beasly* v. *The State*, 64 Miss., 518. It does not cure charge No. 2. It is in conflict with it. Two charges stating the law in different ways are not

curative. 2 Thompson on Trials, § 2326; George's Digest on Conflicting Charges. The fourth charge is erroneous, because it conveys the implication that the intent to kill and the malice both are implied from the use of a deadly weapon, whether its use was lawful or not. Malice, in its legal sense, denotes a wrongful act done intentionally, without just cause or excuse. Desty's Am. Cr. L., § 8; 1 Russ. on Cr., 667 (9th ed.); 1 Whrt. C. L., § 106 (8th ed.); 1 Bishop C. L., § 429 (6th ed.).

Presumptions always yield to facts. In the second paragraph of this charge, the rule of law is erroneously stated. The danger which justifies must be both immediate and apparent. *Lamar's case*, 63 Miss., 265; *Slaughter's case*, 16 So. Rep., 242; *Long's case*, 52 Miss., 23; *Hawthorn's case*, 58 Miss., 778. The fifth charge is condemned by *Buckley's case*, 62 Miss., 705; *McEwen's case*, 16 So. Rep., 242. The sixth charge is erroneous. It is only the arming, intending to use the weapon in the fight, which puts the aggressor beyond the pale of self-defense. The undisputed evidence is that Godwin armed himself only in self-defense, after having been told of Carter's threats and declarations that he was armed and in search of him. *Aldridge's case*, 59 Miss., 250; *Long's case*, 52 Miss., 23; *Hunt's case*, 72 Miss., 418. The seventh charge is condemned by *Beasly's case*, *supra*.

Defendant, in his charges, asked the benefit of a reasonable doubt. He asked the jury to be told where the burden of proof lay; he asked the law of self-defense to be defined; he asked the jury to be told that, if he shot in the heat of passion, he was not guilty. All these fundamental propositions were refused. Defendant is entitled to an instruction as to reasonable doubt in every case, no matter how clear the evidence may seem against him. *State* v. *Gonce*, 79 Mo., 600.

*Wiley N. Nash*, attorney-general, for the state.

If the testimony in this case raises no reasonable doubt in the mind of a reasonable man of the defendant's guilt, an in-

struction to the jury to give him the benefit of a reasonable doubt ought not to be granted. The issue to be decided in a criminal case must be determined by the evidence. The court may direct an acquittal in one state of case, and refuse all instructions as to reasonable doubt in the other. These propositions are undeniable. On the facts, it must be agreed by all that there was a deliberate attempt to kill. The flimsy attempt at justification that Carter placed his hands on his hip, will not avail defendant. *Guice* v. *State*, 60 Miss., 714.

The attorney-general reviewed the testimony at length, to show that the court correctly refused to give the charge as to reasonable doubt in this case.

Argued orally by *R. N. Miller*, for the appellant, and by *Wiley N. Nash*, attorney-general, for the state.

WHITFIELD, J., delivered the opinion of the court.

The first, second, third, fifth, ninth, and twelfth instructions asked by the appellant announced correct propositions of law, as applied to the facts of this case, and should have been given. The fourth, sixth, seventh, tenth, eleventh, and thirteenth instructions asked by appellant were properly refused. They too much narrow the issue before the jury, selecting fragmentarily only part of the facts necessary to any phase of the case stated in them. Besides, the fourth omits the word "reasonable" before the word "doubt." In the sixth, the words "confronted as he was" are objectionable, as assuming that Carter did "confront" appellant throughout the difficulty. And the thirteenth declared that shooting a man "with intent to kill and murder him" might be justifiable. The words "and murder" must have been inadvertently inserted.

All the instructions for the appellant having been refused, even those invoking the doctrine of reasonable doubt, it was especially incumbent on the court to charge the jury correctly for the state, and yet, in not one of the seven charges given

for the state are the jury told that they must "believe from
the evidence beyond a reasonable doubt," etc., but, in five of
the seven, are told to convict if they merely "believe from the
evidence" so and so—merely "believe;" and, in the seventh,
they are told to convict if they "believe" so and so, the words
"from the evidence," even, not being added. The court mani-
festly meant to decide for itself that there was no reasonable
doubt. And, for this reason, all the instructions given for the
state, except the fifth, are erroneous. Besides, the first is sub-
ject to the criticism made of those of appellant's charges that
are pronounced erroneous—that it is too narrow and selects
only part of the facts. The second makes "actual danger"
essential to the right of self-defense. The third contains the
incorrect idea that, though the first shot may have been justi-
fiable, the two last necessarily made the appellant guilty, which
does not, of necessity, follow; and so the seventh is open to
the like objection that it declared appellant guilty if he "de-
liberately shot at Carter while his back was turned." Aside
from the impropriety in the state of case made by this record
of predicating deliberateness of the shooting by appellant (see
*Beasley* v. *State*, 64 Miss., 518), it is not necessarily true that
the appellant should have been convicted if he did shoot at Car-
ter while Carter's back was to him. That would, doubtless,
usually be so, but there are circumstances under which it would
not be true. The instruction should not dogmatically predi-
cate guilt, as charged, therefore, of that solitary fact.

The fourth charge for the state is manifestly erroneous also,
in telling the jury that "the use of a deadly weapon is a pre-
sumption of malice" (thus it is written). This is clearly wrong
in a case like this, where the circumstances attending the kill-
ing are fully shown, and hence there can be no room for pre-
sumptions, as held in *Hawthorne* v. *State*, 58 Miss., 778. Of
itself it would not, however, be reversible error. *Lamar* v.
*State*, 63 Miss., 265.

We do not think the fifth instruction within the condemna-

tion of *Buckley* v. *State*, 62 Miss., 705. It seems correct. It might have been much more clearly put, but it does not point out the defendant's testimony, and can hardly be said to have told the jury that they could arbitrarily reject the testimony of any witness. It will be observed that the court below refused to grant the appellant even the instruction as to his being entitled to the benefit of any reasonable doubt arising out of the evidence. We all agree that these charges should have been given in this case. Speaking for myself alone, I think there is no criminal case in which the court can take thus from the jury the right to say whether or not there was such doubt, as clearly held in *State* v. *Gonce*, 4 Am. Cr. Rep., 68, and in *McGuire* v. *State*, 37 Miss., 378.

My brethren, however, think that the trial court has the power, in certain cases, to refuse all charges as to reasonable doubt, and it must be admitted that *Singleton* v. *State*, 71 Miss., 789, so holds. Neither the court nor the counsel in *Singleton* v. *State* refer to *McGuire's case*, in 37 Miss., 378. That case was ably argued and well considered on this point. The learned attorney-general, in *McGuire* v. *State*, admitted that he could find no case supporting the view announced in *Singleton* v. *State*, 71 Miss., 782. It is manifest that the court in *Singleton* v. *State* failed to note the fact that the point it was deciding had been already decided in this state over thirty years before, exactly the other way, and for reasons as obvious as they are sound; for otherwise the court should have expressly overruled *McGuire* v. *State*, and not left it to mislead further. *Singleton* v. *State* imports into criminal procedure, where it has no place, the rule followed in civil procedure, in very rare cases, of taking the case from the jury by a peremptory charge; for, to refuse a charge on reasonable doubt, is, of course, practically charging the jury to find the defendant guilty. Whether or not the evidence raises a reasonable doubt, is a question of fact and not of law, for the jury and not for the court. And, besides, it is, it seems to me, obvious that a charge as to rea-

---

sonable doubt is unlike a charge on some single isolated phase of the case, because the former announces the rule of law as to the quantum of evidence, which is to be applied to the whole case in any and all of its phases.    No objection can be made to the rule in *McGuire* v. *State* on the score of practical justice, for, if the case be one in which it is perfectly clear that there could be no room whatever for reasonable doubt, the jury would certainly convict; and, if not, though the refusal to give the charge would be error, it would not be reversible error.    But to hold that, as matter of law, such charge can be correctly refused is, in effect, to hold that the court can charge the jury to find the defendant guilty—too dangerous a doctrine, surely, to find any place in a jurisprudence framed under bills of rights in which, in the land of their origin, the right to maintain inviolate the jury trial, has been written in blood, with the point of the sword, as the final declaration of freemen on the subject.    For the errors indicated, the judgment is

*Reversed, and the cause remanded.*